Of course, I would not let that be a final determination of the issue at hand, but it demonstrates that at that particular time during the trial, there did not seem to be any animosity between Hughes and his counsel. Moreover, although the majority finds that the silence by juror Orman in light of other additional questions on voir dire apparently means little, it is still further proof that perhaps counsel knew something about the juror of which we are not aware.

Because there is no sworn testimony in the record concerning this issue of juror bias and why the juror was not stricken, I think that a remand and order of a new trial in this case is more relief than is justified under the law. I would remand this case to the district court, but for purposes of hearing evidence on the question of why counsel decided not to strike juror Orman. Counsel has never explained why he took this action. I can think of several scenarios in which counsel might decide to keep juror Orman on the panel, even with her answers to the voir dire questions. For instance, Hughes may have requested that Orman remain on the jury. Hughes denies it now, but not under oath. In addition, there may have been something in the background of Orman that either Hughes or counsel knew, that is not obvious on the record. If counsel did not strike the juror because Hughes requested it, I would not find ineffective assistance of counsel, unless the defendant was insane, which is not alleged. I do not find that counsel's failure to ask further questions on voir dire or to strike the juror, without counsel's explanation, was objectively unreasonable under the criteria found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Otherwise, a defendant could "sandbag" the court by insisting that his counsel leave a juror on the panel and then later claim that he told counsel to strike the juror. Therefore, I would remand only for a factual determination of the strategy by counsel in refusing to pursue voir dire or strike Orman and then for the court to determine whether that conduct was objectively reasonable under *Strickland*. A new trial is not yet justified under the current status of the record.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0211P (6th Cir.)
File Name:  01a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MARSHALL DWAYNE HUGHES,
    *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

No. 99-1339

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74312—Bernard A. Friedman, District Judge.

Submitted: March 8, 2001

Decided and Filed: July 9, 2001

Before: SILER, MOORE, and CLAY, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Marshall Dwayne Hughes, Miami, Florida, pro se. Krishna S. Dighe, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

1

CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. SILER, J. (pp. 19-20), delivered a separate dissenting opinion.

_____

## OPINION

_____

CLAY, Circuit Judge. Petitioner, Marshall Dwayne Hughes, appeals from the district court order denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, we **REVERSE** the district court order and **REMAND** for proceedings consistent with this opinion.

### BACKGROUND

On May 18, 1995, a jury found Petitioner guilty of theft of government property in violation of 18 U.S.C. § 641, and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 17, 1995, Petitioner was sentenced to two hundred thirty-five (235) months of imprisonment. The conviction was affirmed on direct appeal. *United States v. Hughes*, No. 95-1939, 1997 WL 271737 (6th Cir. May 20, 1997), *cert. denied*, 522 U.S. 902 (1997). On October 5, 1998, Petitioner moved to vacate, set aside, or correct his sentence pursuant to § 2255, raising issues of ineffective assistance of counsel, government bribery of a witness, and incorrect calculation of criminal history level. The district court denied the motion on January 20, 1999. On April 12, 1999, the district court denied Petitioner's request for a certificate of appealability. On January 3, 2000, this Court granted Petitioner a certificate of appealability, but only on the issue of whether trial counsel rendered ineffective assistance by failing to strike a juror who stated on *voir dire* that she did not think she could be fair in this case.

On January 17, 1994, while returning home from work in Detroit, Deputy United States Marshal Charles Fonseca was robbed by two men at gunpoint after his vehicle became stuck

_____

## DISSENT

_____

SILER, Circuit Judge, dissenting. I respectfully dissent from the majority decision. Although on the face of the voir dire of juror Orman, it might appear that she could not be fair to the defendant, as the majority states in its citation to *Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992), "Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." *Id*. Unlike the *Johnson* case, there is no basis to determine whether a strategic decision was made by counsel in this case. The only issue which was certified for this panel to answer was whether counsel's failure to strike a juror constituted ineffective assistance. I would not find that this act alone constitutes ineffective assistance of counsel.

The majority cites *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), to show that the failure of the trial court to strike a biased juror for cause was reversible error, but that has to do with error by the *court*. That issue is not certified here. Similarly, *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), is a direct appeal and involves court error. I fully agree with the decisions in those cases, but they do not discuss the issue before us here, the per se ineffectiveness of counsel.

Although Hughes asserts that he asked his counsel to strike juror Orman, there is no sworn statement by Hughes that he asked counsel to do so.[1] As the majority opinion demonstrates, Hughes was later asked in the trial if he was satisfied with counsel, to which he replied in the affirmative.

_____

[1] There must have been a sworn statement in *Johnson*, for the court states: "Johnson's trial counsel made no attempt to remove the Denny jurors for cause even though he was prompted to do so by Johnson himself." *Johnson*, 961 F.2d at 755.

defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

Because we find counsel's performance to have been objectively unreasonable under *Strickland*, and that impaneling a biased juror prejudiced Petitioner, we **REVERSE** the district court order denying Petitioner's § 2255 motion as to the ineffective assistance of counsel claim, and **REMAND** the case for a new trial.

in the snow. Several items were taken from him, including a .357 caliber revolver, his coat, some rings, a watch, and a bracelet. When Fonseca and an older man who had stopped to assist him saw an opportunity to escape, they ran. As Fonseca ran, he shouted to the two assailants that they had just stolen a federal marshal's firearm. The only response Fonseca heard was of two shots being fired by the assailants. The assailants then ran behind an apartment building at 1761 Webb Street.

Two residents of 1761 Webb Street, Bridgette Henderson and Donna Henderson, testified at trial. Bridgette testified that Petitioner had been in her apartment earlier that day. She later saw someone in the apartment building hallway wearing a "Fila" brand jacket, which resembled the jacket Petitioner had worn earlier that day, and who was carrying a silver colored gun. The following day, Bridgette spoke with Petitioner on the phone, who said that he did not know that Fonseca was a "cop," and that he had some items to get rid of, including a gun, a coat, and a bracelet. Donna testified that she saw Petitioner standing in front of Fonseca's car, and that Petitioner was wearing a "Fila" brand jacket. Fonseca identified Petitioner as the man to whom he gave his jewelry, coat, and firearm while the other assailant pointed a gun at Fonseca and the older man.

Petitioner's appeal concerns events on *voir dire*, where the judge asked potential jurors whether they thought they could be fair in this case. In response, the following colloquy occurred:

JUROR [Jeanne Orman]: I have a nephew on the police force in Wyandotte, and I know a couple of detectives, and I'm quite close to 'em.

THE COURT: Anything in that relationship that would prevent you from being fair in this case?

JUROR: I don't think I could be fair.

THE COURT: You don't think you could be fair?

JUROR:  No.

THE COURT: Okay.  Anybody else?  Okay.  Where did we leave off?

(*Voir Dire* Tr. at 16-17.)  Petitioner contends that at this time, he asked his trial counsel to remove juror Orman for cause from the venire.  Following Orman's declaration and Petitioner's alleged request that Orman be removed, Petitioner's counsel neither questioned Orman nor attempted to remove her for cause or by peremptory strike.  Counsel did ask the potential jurors, as a group, whether their ability to be impartial in the case would be affected by Petitioner's prior felony conviction and involvement with drugs.  Orman did not respond to either question.  Counsel also asked the potential jurors if they would find a witness more credible if the witness were a police officer.  Orman did not respond.  The court then informed the potential jurors that Petitioner would start the case with a "clean slate," and asked them, as a group, if they all could find at that moment that Petitioner was not guilty because there had not yet been any testimony.  There was no juror response.  Although Petitioner's counsel did not challenge Orman, counsel did challenge two other jurors for cause, and declined the court's invitation to challenge additional jurors.  Petitioner's counsel also did not exhaust his peremptory challenges under Federal Rule of Criminal Procedure 24, using only nine.[1]  At the close of evidence, Hughes answered affirmatively when asked by the district court if he was satisfied with his counsel's representation up to that point.

---

[1] In cases involving charged offenses that are punishable by imprisonment of more than one year, Rule 24 allows defense counsel ten peremptory challenges, with an additional peremptory challenge where, as in this case, the court impaneled two alternate jurors.

instructing counsel not to strike a biased venireperson on *voir dire* in order to bolster a potential Sixth Amendment claim on appeal.  Simply, no such risk would exist but for the possibility of a complete lapse by the trial court, as in this case, in carrying out its obligation on *voir dire*.  "'[I]n each case a broad discretion and duty reside in the court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality . . .' Accordingly, the presiding trial judge has the authority and responsibility, either *sua sponte* or upon counsel's motion, to dismiss prospective jurors for cause." *Torres*, 128 F.3d at 43 (quoting *Frazier v. United States*, 335 U.S. 497, 511 (1948)).  "When a prospective juror manifests a prior belief that is both material and contestable . . . it is the judge's duty to determine whether the juror is capable of suspending that belief for the duration of the trial." *Thompson*, 248 F.3d at 627 (citations and emphasis omitted).

The dissent contends that our reliance on *Thompson* and *Martinez-Salazar* is misplaced because those cases concerned court error, rather than ineffective assistance of counsel.  However, our reliance on *Thompson* and *Martinez-Salazar* concerns the Sixth Amendment consequences of impaneling a biased juror.  These Sixth Amendment requirements apply regardless of whether blame for a biased jury is assigned to counsel or the court, who ultimately share the *voir dire* responsibility of removing biased venirepersons.  As in *Thompson*, when counsel attempts to meet this responsibility, and the court rejects counsel's attempt, court error, indeed the court's abuse of discretion, requires reversal of the conviction. *Thompson*, 248 F.3d at 627.  Alternatively, as in *Johnson*, when counsel fails to attempt to meet this responsibility, the resulting ineffective assistance of counsel requires reversal of the conviction. *Johnson*, 961 F.2d at 756. *Thompson*, *Martinez-Salazar*, and *Johnson* stand equally for the position that a conviction from a biased jury must be reversed.  Accordingly, we do not find it controversial to hold, under *Johnson*, that when the court has failed to respond to a biased juror on *voir dire*, counsel who fails to respond in turn is no longer functioning as "counsel" guaranteed the

Cir. 1997) (citing *United States v. Wood*, 299 U.S. 123, 133 (1936)).

If counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to an impartial jury. However, if counsel cannot waive a criminal defendant's basic Sixth Amendment right to trial by jury "without the fully informed and publicly acknowledged consent of the client," *Taylor v. Illinois*, 484 U.S. 400, 417 n. 24 (1988), then counsel cannot so waive a criminal defendant's basic Sixth Amendment right to trial by an impartial jury. Indeed, given that the presence of a biased juror, like the presence of a biased judge, is a "structural defect in the constitution of the trial mechanism" that defies harmless error analysis, *Johnson*, 961 F.2d at 756 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)), to argue sound trial strategy in support of creating such a structural defect seems brazen at best. We find that no sound trial strategy could support counsel's effective waiver of Petitioner's basic Sixth Amendment right to trial by impartial jury.

The impaneling of a biased juror warrants a new trial. If an impaneled juror was actually biased, the conviction must be set aside. *Johnson*, 961 F.2d at 754 (citing *Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982), *cert. denied*, 459 U.S. 1110 (1983); *United States v. Crockett*, 514 F.2d 64, 69 (5th Cir. 1975); *United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971), *cert. denied*, 405 U.S. 918 (1972); *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953)). The "presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000) (citations omitted). Accordingly, given that a biased juror was impaneled in this case, prejudice under *Strickland* is presumed, and a new trial is required.

Granting a new trial in this case will not enhance the potential risk of a defendant "sandbagging" a trial court by

## DISCUSSION

This Court granted a certificate of appealability only as to one issue in Petitioner's § 2255 motion: whether counsel's failure to strike a juror who stated, on *voir dire*, that she did not think she could be fair, constituted ineffective assistance.[2] In reviewing the denial of a § 2255 petition, this Court reviews legal issues *de novo* and will uphold district court factual findings unless they are clearly erroneous. *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998). This court reviews a claim of ineffective assistance of counsel, which presents a mixed question of law and fact, *de novo*. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), finding ineffective assistance of counsel requires first finding that counsel's performance was objectively unreasonable under the Sixth Amendment, and second, that counsel's deficient performance prejudiced defendant. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

Counsel is also accorded particular deference when conducting *voir dire*. An attorney's actions during *voir dire* are considered to be matters of trial strategy. *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995)). A

---

[2] "Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). On direct appeal, Petitioner did not raise the issue of ineffective assistance of counsel. *Hughes*, 1997 WL 271737, at *2-6 . However, as a general rule, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). Instead, "[t]he customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255." *Id.* Because Petitioner's ineffective assistance claim was properly raised by his motion pursuant to § 2255, Petitioner's claim is not defaulted.

strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness. *Id.*

Similar deference is extended to the trial court's management of *voir dire*. The Supreme Court has acknowledged the "traditionally broad discretion accorded to the trial judge in conducting *voir dire*." *Mu'min v. Virginia*, 500 U.S. 415, 423 (1991) (quoting *Ham v. South Carolina*, 409 U.S. 524, 528 (1973)). "Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge . . . must reach conclusions as to impartiality and credibility by relying on [his or her] own evaluations of demeanor evidence and of responses to questions." *Mu'min*, 500 U.S. at 424 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)).

However, a trial court's broad discretion in the conduct of *voir dire* is nevertheless "subject to essential demands of fairness." *Wolfe v. Brigano*, 232 F.3d 499, 504 (6th Cir. 2000) (Wellford, J., concurring) (quoting *United States v. Nell*, 526 F.2d 1123, 1229 (5th Cir. 1976)). "At stake is [Petitioner's] right guaranteed by the Sixth Amendment to an impartial jury; the principal way this right is implemented is through the system of challenges exercised during the voir dire of prospective jurors." *Nell*, 526 F.2d at 1229 (citing *Swain v. Alabama*, 380 U.S. 202 (1965)). A defendant may obtain a new trial if an impaneled juror's honest responses to questions on *voir dire* would have given rise to a valid challenge for cause. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "Challenges for cause are subject to approval by the court and must be based on a finding of actual or implied bias." *Virgin Islands v. Felix*, 569 F.2d 1274, 1277 n.5 (3d. Cir. 1978).

Petitioner's "claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, [Petitioner] must show that the juror was actually

[recycled] jurors about bias, but instead relied on the jurors' silence to two general questions propounded by the prosecutor." *Johnson*, 961 F.2d at 755. In this case, not only did counsel rely on a silent response to generalized questioning of the venire, such reliance actually followed an express admission of bias. When a venireperson expressly admits bias on *voir dire*, without a court response or follow-up, for counsel not to respond in turn is simply a failure "to exercise the customary skill and diligence that a reasonably competent attorney would provide." *Id.* at 754.

If the district court or counsel had responded in some way to Orman's express admission of bias, counsel in this case may have been able to argue sound trial strategy in support of not challenging Orman on *voir dire*. If *Johnson* is consistent with the position that sound trial strategy may support counsel's decision not to challenge a juror on *voir dire*, despite the juror's obvious bias against counsel's client, then we depart from *Johnson* on this point. However, such a reading of *Johnson* is in tension with its own language and conclusion. The *Johnson* court noted that the state, "somewhat incredibly," argued trial strategy in support of counsel's failure to request removal for cause of the recycled jurors. *Johnson*, 961 F.2d at 755. Further, the *Johnson* court concluded that counsel's "failure to attempt to bar the seating of obviously biased jurors constituted ineffective assistance of counsel of a fundamental degree." *Id.* at 756.

The question of whether to seat a biased juror is not a discretionary or strategic decision. The seating of a biased juror who should have been dismissed for cause requires reversal of the conviction. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000). "Failure to remove biased jurors taints the entire trial, and therefore . . . [the resulting] conviction must be overturned." *Wolfe*, 232 F.3d at 503. "A court must excuse a prospective juror if actual bias is discovered during voir dire." *Allsup*, 566 F.2d at 71. "Actual bias is 'bias in fact'--the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2d

(J.A. at 121.)

The government offers no authority in support of denying an ineffective assistance of counsel claim on grounds that defendant approved of his counsel's strategy, as illustrated by defendant's failure to object when a biased juror was impaneled and by defendant's express satisfaction with counsel's performance at trial. In contrast, as noted by the Eighth Circuit, "[w]hen a defendant fails to object to the qualifications of a juror, he is without remedy only if he fails to prove actual bias." *Johnson*, 961 F.2d at 754 (citation omitted).

Further, when considering how heavily to weigh Petitioner's express satisfaction with counsel at trial in our determination of counsel's performance, we look to *Strickland* itself. *Strickland* provided that the risk of a defendant's temptation to "second-guess counsel's assistance after conviction or adverse sentence" is accounted for in the directive that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This strong presumption captures the risk of a defendant's second-guessing of counsel strategy in hindsight. In light of this strong presumption, we are hesitant to further limit the prospects of an ineffective assistance claim by placing great weight on a defendant's admission of satisfaction with counsel's performance at trial. Moreover, in this particular case, because the admission consisted of a rote affirmation of the court's leading question, asked not in the context of counsel's performance on *voir dire*, but rather in the unrelated context of Petitioner's decision to testify at trial, we do not, for purposes of determining objectively unreasonable performance under *Strickland*, invest the admission with any significance at all.

Because the district court failed to respond to Orman's express admission of bias on *voir dire*, we find that counsel's failure to respond in turn was objectively unreasonable under *Strickland*. In *Johnson*, counsel "failed to question any of the

---

biased against him." *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1981)).

A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*. In *Patton v. Yount*, 467 U.S. 1025, 1032 (1984), the Supreme Court found that the trial court did not commit "manifest error" when finding jury members to be impartial. Eight of the fourteen jurors in question, due to pretrial publicity, "admitted that at some time [prior to trial] they had formed an opinion as to [defendant's] guilt." *Patton*, 467 U.S. at 1029-30. One of the impaneled jurors "stated at voir dire that he would have required evidence to change his mind about [defendant's] guilt." *Id*. at 1030-1031.

In *Murphy v. Florida*, 421 U.S. 794, 803 (1975), the Supreme Court found that defendant had "failed to show that . . . the jury-selection process of which he complains permits an inference of actual prejudice." One juror in *Murphy* agreed, on *voir dire*, with the characterization that "[m]y experience of [defendant] is such that right now I would find him guilty." *Id*. at 802. Another juror responded during *voir dire* that defendant's prior convictions would "probably" influence her verdict. A third juror conceded that "it would be difficult, during deliberations, to put out of [the juror's] mind that [defendant] was a convicted criminal". *Id*. at 805-807 (Brennan, J., dissenting).

This Court has declined to find actual bias where a juror's concern over her acquaintance with witnesses to be called at trial was eased by the assurances of a federal marshal. *United States v. Rigsby*, 45 F.3d 120 (6th Cir. 1995). This Court has also declined to find actual bias where "five jurors receive late night threatening phone calls, the entire jury discusses the phone calls during deliberations, and one juror expressly privately doubts as to whether she can render an objective decision based solely on the evidence." *United States v.*

*Pennell*, 737 F.2d 521, 538 (6th Cir. 1984) (Celebrezze, J., dissenting).

Nevertheless, what distinguishes Petitioner's case from *Murphy*, *Patton*, *Rigsby* and *Pennell* is the conspicuous lack of response, by both counsel and the trial judge, to Orman's clear declaration that she did not think she could be a fair juror. The district court's reliance on unrelated group questioning of potential jurors on *voir dire* does not address the simple fact that neither counsel nor the court offered any response to Orman's declaration or follow-up questions directed to Orman. Although the precedent of the Supreme Court and this Court makes us circumspect about finding actual juror bias, such precedent does not prevent us from examining the compelling circumstances presented by the facts of this case--where both the district court and counsel failed to conduct the most rudimentary inquiry of the potential juror to inquire further into her statement that she could not be fair.

The above precedent included key elements of juror rehabilitation and juror assurances of impartiality which are absent here. In *Murphy*, the Supreme Court did not find juror bias due to the leading nature of counsel's questions and, with regard to the one juror who presented the closest question of partiality, that juror's "other testimony [indicated] that he had no deep impression of petitioner at all." *Murphy*, 421 U.S. at 802. Similarly, in *Patton*, the Supreme Court noted that the *voir dire* testimony of the three jurors at issue was "ambiguous and at times contradictory," explained in part by "the type of leading questions and cross-examination tactics . . . that were evident in this case." *Patton*, 467 U.S. at 1039. In *Rigsby*, "[e]very juror who served on the case indicated that he or she could, and would, make a verdict based solely on the evidence and instructions." *Rigsby*, 45 F.3d at 125. In *Pennell*, in response to threatening phone calls made to the homes of five jurors, the trial court specifically questioned those five jurors on whether the calls might affect their impartiality in the case. The jurors responded, individually and consistently, that they did not believe the phone calls

*voir dire*: the judge in *Thompson* "should have followed up [on the juror's indication of bias] by asking her, as he later asked the jury *en masse*, whether she would follow his instructions on the law and suspend judgment until she had heard all of the evidence." *Thompson*, 248 F.3d at 626. The silent response in this case by a group of thirty-two venirepersons to generalized questioning on the subjects of prior conviction, drug involvement, and police credibility did not, in any way, constitute rehabilitation of, or an assurance by, juror Orman regarding her particular bias arising from her personal relationships with a police officer and police detectives.

Second, whether Petitioner was "satisfied with . . . defense counsel is not at issue. The fundamental question is rather whether [Petitioner's] conviction should be vacated due to the ineffectiveness of his trial counsel." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Specifically, the question in this case is whether counsel's performance was objectively unreasonable under *Strickland* in light of counsel's failure to respond to Orman's express admission of bias on *voir dire*. The government argues that Petitioner's express satisfaction with counsel's performance at trial weighs in favor of finding counsel's performance to have been consistent with the Sixth Amendment. Immediately prior to closing argument at trial, the following colloquy occurred:

THE COURT: Okay. [Petitioner], I forgot to ask you before, but I saw you talk to your attorney. Anyhow, at the time when you took the stand, it's my understanding it was your decision to take the stand, is that correct?

[PETITIONER]: Yeah.

THE COURT: Okay. As I say, I usually ask it before and saw you two talk and forgot to ask it. And you're satisfied with [counsel's] representation up to this point?

[PETITIONER]: Yeah.

was impaneled and his express satisfaction with counsel's performance at trial.

First, Orman's silence in the face of generalized questioning of venirepersons by counsel and the court did not constitute an assurance of impartiality. The Eighth Circuit, in *Johnson*, upheld the district court's grant of habeas relief, on ineffective assistance of counsel grounds, where counsel had failed to challenge on *voir dire* four recycled jurors who had earlier convicted another man of taking part in the same robbery for which defendant was on trial. Particularly applicable to the case at hand, the *Johnson* court found that:

> The Missouri Court of Appeals made no attempt to elicit facts pertaining to the potential bias of jurors. It appears that the appellate court's finding was based solely on the fact that all venire members remained silent when the prosecutor asked them two questions about whether they could put aside the evidence presented at the [previous] trial and judge [defendant] exclusively on the evidence presented at [defendant's] trial. We cannot say that an ambiguous silence by a large group of venire persons to a general question about bias is sufficient to support a finding of fact in the circumstances of this case. The exceptional circumstances of this case warranted more aggressive questioning during voir dire . . . when nine venire members (including four subsequent jurors) heard extensive evidence against the defendant in a prior case under circumstances in which he is presented to them in shackles and under guard, and in a situation in which he is unable to mount a defense to the charges, an ambiguous silence by venire persons to a generalized question of bias is not sufficient to demonstrate impartiality.

*Johnson*, 961 F.2d at 753-54. The government makes the same argument from an ambiguous silence in this case.

In addition to the Eighth Circuit in *Johnson*, Judge Posner, in *Thompson*, has also distinguished individualized from group questioning for purposes of determining juror bias on

would impair their ability to render a fair verdict. One juror, who had not received a call, did state that she felt the phone calls would influence her judgment in the case. The court then called the juror for questioning. In response to additional questioning, the juror "stated three times that the calls would not affect her deliberations and further stated that she could still abide by her juror's oath." *Pennell*, 737 F.2d at 530.

Under the Sixth Amendment, the longstanding Supreme Court standard for juror impartiality is as follows:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 723 (1961) (citations omitted). This Court, in *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000), identified, among important factors for determining whether a potential juror can lay aside her partiality, "the juror's own estimation of the relevance of [the information giving rise to her partiality]; any express indications of partiality by [the] juror . . . and the steps taken by the trial court in neutralizing this information." Significantly absent from this case is any attempt, by counsel or the court, to rehabilitate juror Orman to establish record support for the claim that Orman was able to cast aside her opinion and render a verdict based on the evidence presented in court.

"A court must excuse a prospective juror if actual bias is discovered during voir dire. Bias can be revealed by a juror's express admission of that fact, but more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence." *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977). In this case, given juror Orman's open declaration of her inability to be fair, we need not rely on circumstantial evidence to establish bias. Further, because Orman's

declaration was not followed by any attempt at clarification or rehabilitation, there is no ambiguity in the record as to her bias; Orman's express admission is the only evidence available to review. A district court may rely upon juror assurances of impartiality in deciding whether a defendant has satisfied his burden of proving actual prejudice. *Pennell*, 737 F.2d at 533. However, in this case, Orman offered no assurances on which to rely.

The Fifth Circuit, in *Nell*, found an express admission of bias where a juror on *voir dire* expressed strong dislike for unions, and "[n]ever once [said] that he would be able to render a fair and impartial verdict." *Nell*, 526 F.2d at 1230. The juror in *Nell* had responded to a question regarding potential bias against federal law that regulates labor unions. *Id*. at 1228. Significantly, the juror in *Nell*, when asked generally about bias, "could not judge how he would perform as a juror." *Id*.

We find, under *Nell*, that juror's Orman's declaration that "I don't think I could be fair," based on her personal relationships with a police officer and police detectives, in a case involving the theft of a federal marshal's firearm and personal property at gunpoint, constituted an express admission of bias. Like the juror in *Nell*, Orman never said that she would be able to render a fair and impartial verdict. Unlike the juror in *Nell*, however, Orman had no difficulty in judging how she would perform as a juror at trial; she did not think that she could be fair. Given Orman's express admission of bias, with no subsequent assurance of impartiality and no rehabilitation by counsel or the court by way of clarification through follow-up questions directed to the potential juror, we find Orman to have been actually biased in this case. In fact, without more, juror bias can always be presumed from such unequivocal statements as were made in this case.

We also reject the district court's conclusion that Orman's statement was ambiguous because she did not specify how exactly she would not be fair. It is a clear inference that a

person whose nephew is a member of a local police force, and who is "quite close" to a few detectives, would be biased *against* a defendant who was said to have stolen a government firearm from a federal marshal at gunpoint. Moreover, the court in *Nell* found that so long as the judge realized that "prejudicial fallout existed . . . on which side the prejudice would fall" was a question immaterial to counsel's challenge of a juror for cause. *Nell*, 526 F.2d at 1228.

Our finding of actual bias is further supported by the recent decision in *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001). In *Thompson*, the Seventh Circuit found that a juror "manifest[ed] a degree of bias such that the [trial] judge abused his discretion in failing to strike her for cause[.]" *Thompson*, 248 F.3d at 625. This finding of bias was based on the following statements by the juror on *voir dire*: "I think I bring a lot of background to this case, and I can't say that it's not going to cloud my judgment. I can try to be as fair as I can, as I do every day." *Id*. at 624. The court, when reviewing these statements, noted that the juror "said she would *try* to be fair, but . . . expressed no confidence in being able to succeed in the attempt." *Id*. at 626 (emphasis in original). Significantly, Judge Posner, writing for a panel which was unanimous as to this issue, observed that if the juror had "said she could *not* be fair, the judge would of course have had to strike her for cause." *Id*. (emphasis in original). Judge Posner's hypothetical example, of course, mirrors the facts in this case.

"Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." *Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992) (citations omitted). The government's argument against finding ineffective assistance of counsel in this case largely rests on two points: first, Orman's silence on *voir dire* in the face of generalized questioning on bias by counsel and the court; and second, Petitioner's failure to openly question his counsel's strategy during court proceedings, illustrated by his failure to object when Orman