RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————————

UNITED STATES OF AMERICA,
                          *Plaintiff-Appellee*,

                                                              No. 11-4399

          *v.*

TRENT SHEPARD,

                          *Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:10-CR-415-1—David D. Dowd, Jr., District Judge.

Decided and Filed: January 7, 2014

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

———————————————

**COUNSEL**

**ON BRIEF:** Gregory A. Napolitano, LAUFMAN & NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

———————————————

**OPINION**

———————————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. After a jury found defendant Trent Shepard guilty of three counts of receipt of visual depictions of minors engaged in sexually explicit conduct and an additional count of attempted receipt, the district court sentenced Shepard to 168 months in prison and five years on supervised release. The district court also imposed a $400 special assessment on the defendant, ordered Shepard to pay $3,000 in restitution to child victim "Vicky," and imposed as special conditions of supervision prohibitions on any access by Shepard to computers, cameras, or video equipment without prior written approval from the probation officer or the

court. On appeal, the defendant now challenges: (1) the seating of a juror who asserted he would not view the pornographic images; (2) the sufficiency of the evidence introduced to convict Shepard; and (3) the reasonableness of the sentence imposed upon him. For the reasons discussed below, we conclude that the district court abused its discretion in failing to remove from the jury a member of the panel who was unable to swear that he would give the defendant a fair trial. As a result, the case must be remanded for retrial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Trent Shepard was employed as an outside salesman by Blue Tarp Financial, a company that provided trade credit to building suppliers. Although Blue Tarp Financial was headquartered in Charlotte, North Carolina, Shepard lived in Poland, Ohio, and worked out of that home base. In the process of terminating Shepard from employment at Blue Tarp, company officials discovered child pornography on three different Blue Tarp laptops that Shepard had used in the course of his job. As later described by a witness at trial, many of the files contained very graphic images of naked, prepubescent children. After contacting the company's attorneys, the laptops were secured and then turned over to the FBI.

Eventually, all three computers were sent to the FBI office in Cleveland, Ohio. Once there, the laptops were examined by a forensic examiner with the FBI's Computer Analysis Response Team. He discovered that the three laptops contained child pornography in the computers' temporary internet files, caches, free spaces, and shared folders. The evidence led to a multi-count indictment against Shepard, charging him with receipt and attempted receipt of visual depictions of minors engaged in sexually explicit conduct. He pleaded not guilty, intending to claim as a defense that he did not know how the pornographic material in question got into his computer, and went to trial.

Prior to commencement of *voir dire*, the district court distributed two questionnaires to prospective jurors. One of those questionnaires asked, "Does the fact that the defendant is charged with crimes involving sexually explicit materials cause you to be predisposed either for or against the defendant or the government?" Because Juror

answered that inquiry in the affirmative, the district judge asked him whether he cared to elaborate on that reply. In response, the following colloquy occurred:

> JUROR 29: Well, I mean, just the nature of the case, obviously. You know, I've got little kids, so obviously just the nature of the case.
>
> THE COURT: Well, if it was a murder case, would you have a problem with it?
>
> JUROR 29: No.
>
> THE COURT: If it was a robbery case, would you have a problem?
>
> JUROR 29: No.
>
> THE COURT: Burglary case, would you have a problem?
>
> JUROR 29: No.
>
> THE COURT: See, the issue still is, is the government able to prove, by proof beyond a reasonable doubt, the elements of the crime? And if they do, the jury's response is guilty. And if they fail, the jury's response is not guilty.
>
> Now, you don't have any problem with that concept, do you?
>
> JUROR 29: No. I thought I should at least mark it to be fair.
>
> THE COURT: I understand, and I appreciate the fact you marked it. But what I'm really trying to get you to do is think intellectually about what jury service is all about.
>
> JUROR 29: Correct, I understand.
>
> THE COURT: No matter what the crime is, the government has to prove it. And you already indicated you wouldn't have a problem if it was a murder case or robbery case or burglary case. I'm just [trying] to get you to think through your – I don't think you're in favor of murder?
>
> JUROR 29: No.
>
> THE COURT: You are not in favor of robbery or burglary. So, see, it's the sexual connotations that makes you stop and think. And I don't – I appreciate the fact you told me about this fairly and honestly, but I want you to think about it in terms of whether or not you really can serve as a juror in this case. And I think you can based on answers you've given me. Let me say, there is no indication here – there is no establishment or no proof that the defendant is a pedophile. It has to do with materials that he's charged with.

JUROR 29:  That's correct.  I understand.

THE COURT:  Now, having thought that through, let me ask you this: If you're chosen as a juror in this case, will you accept the responsibility to decide the facts in dispute?

JUROR 29:  Yes.

THE COURT:  Will you follow the law as I instruct you the law to be?

JUROR 29:  Yes.

THE COURT:  Do you know of any reason why you could not be fair and impartial in this case?

JUROR 29:  No, I do not.

THE COURT:  Okay.

Neither the government nor the defendant exercised a peremptory challenge to remove Juror 29 from the panel.  Consequently, he became a member of the jury that was empaneled and sworn but was released for the evening before any testimony was heard.  The following morning, however, prior to the return of the jury to the courtroom, the district judge informed counsel for the government and for the defendant that his courtroom deputy, Debbie Mattei, had received the following recorded message from Juror 29 the previous afternoon after the jury had been discharged for the day:

> Hi Debbie, I'm a juror that was in the courtroom today for Judge Dowd's case.  And I just left there and I don't know how I'm going to be able to do this tomorrow.  I'll be honest with you.  I'm, like, half sick.  I guess they're showing pictures or a video tomorrow.
>
> There is just no way I'm going to be able to view these pictures or video.  So I really don't know what to do.  I just called in, and they put me to your number.  You know, there is just no way I can view any of these pictures or video on this case tomorrow.
>
> I don't know what to do, to be honest with you, or who I need to talk to.  My cell phone number is [xxx-xxx-xxxx].  I just don't know who to talk to.  You know, I don't want to ruin anything, but there is no way I can view any of these pictures or video.  I have kids and can't do this.  So if you or someone else – or so if you or someone can give me a call, give me some direction, I would really appreciate it.
>
> Thank you so much.  Bye-bye.

When the district judge inquired of the attorneys how they would resolve the dilemma, the prosecutor suggested that "rather than ignore it, just to voir dire him briefly just to maybe indicate to him that any decent person that views these images is sick to their [sic] stomach." However, David Betras, one of Shepard's defense attorneys, argued that the juror should be excused because "he doesn't think he can fulfill his obligations as a juror." In the end, the district court called Juror 29 back into the courtroom and advised him that he was still under oath. At that time, the district judge, Betras, and Michael Sullivan, the prosecutor, engaged in the following conversation:

> MR. BETRAS: We have been informed that you're having some difficulty sitting as a juror in this case; is that fair for me to say?
>
> JUROR 29: That's fair.
>
> THE COURT: [W]hat we have done is we've transcribed the telephone call, and the counsel have the transcript of your telephone call to Debbie yesterday. So they have the complete text of what you said.
>
> JUROR 29: Okay.
>
> MR. BETRAS: So the question becomes, even though the images are – they're hard to look at, like I said in opening, but can you be fair and impartial? Or do you think you could no longer fulfill your job as being a fair and impartial juror in this case?
>
> JUROR 29: I won't be able to view the pictures or the video.
>
> THE COURT: Excuse me?
>
> JUROR 29: I will not be able to view the pictures or video.
>
> THE COURT: What do you mean you will not be able to? Are you going to close your eyes? You're saying yes, you're going to close your eyes?
>
> JUROR 29: Yes. I don't – I'm sorry. Am I able to speak?
>
> THE COURT: Sure.
>
> JUROR 29: I don't – I mean, I understand the context of it. I don't think the pictures and the video, it is what it is. I know what that is. And I don't think that's going to – I guess it comes down to, Your Honor, when right before we left yesterday, you made the comment that do not look anything up on the internet after we leave because that stuff will stay in your brain, you can't get it out. Your brain has a way of keeping it. And

as I was driving home I thought the exact same thing with these pictures and video, and that's the last thing I want in my head with two little kids at home.

MR. BETRAS:  Well, if you're required as a juror to look at everything that is shown to you as an exhibit and you can't do it, do you feel you could be a juror in this case?

JUROR 29:  No, I do not.

MR. BETRAS:  No further questions, Your Honor.

JUROR 29:  Sorry.

MR. SULLIVAN:  Good morning, [Juror 29].

JUROR 29:  Good morning.

MR. SULLIVAN:  Okay.  You understand the importance of having a jury that's fair and impartial to the defendant and also to the government?

JUROR 29:  Absolutely.  That's why I brought this up.

MR. SULLIVAN:  Right.  And do you understand that if we had a jury of only people who had no discomfort in viewing images of child pornography, that probably won't be a jury that would be fair and impartial to the government?  Do you understand that?

JUROR 29:  I truly understand that.

MR. SULLIVAN:  And these images are disturbing.  They would be disturbing to any decent person; is that right?

JUROR 29:  Correct.

MR. SULLIVAN:  And if you were in a homicide case you might have to see some very graphic photographs of a dead body or an autopsy, and that might make you uncomfortable as well; is that fair?

JUROR 29:  Fair.

MR. SULLIVAN:  So as a sworn juror, if you are – I mean, you have an obligation to weigh all the evidence, as uncomfortable or as distasteful as that might be, can you understand that?

JUROR 29:  That's correct.

MR. SULLIVAN:  And realizing that as a percentage of the time of the trial, the time that the jurors are going to be looking at any images or videos is going to be just a small fraction of the totality of the evidence in this case.  Can you tell us whether or not you can fulfill your

obligation, as uncomfortable as it may be?  I'm not saying you have to stare and have it burned in your memory, but just to view the evidence for what it's worth and then to carry on your obligation so that you can – so that the government and the defendant can both have a fair and impartial jury?

JUROR 29:  I wish I could as a citizen, I really do, because I think that is the fair thing to do.  It's just – I don't want it in my head.  My two little kids, I got home last night and I just gave them a hug.  And that's the last thing I want to think about.  To me it's the lowest part of humanity, and that's, you know, whoever did it, that's, you know, a good question.  It's just – I don't want those images in my head, trying to get those out of my head for the next ten years, you know.  I've never seen anything like that and I don't ever intend to.  It's just disturbing.  And I thought about it a lot.  You know, and that's why I think we had the small side-bars, as we come up, and I answered that one question on my questionnaire about prejudice to that sort of case.  And I think it would be difficult.

At that time, the district judge began questioning Juror 29 regarding any conversations he might have had with other jurors concerning his hesitancy to view the images and videos.  He admitted that one of his fellow jurors commented to him that morning, "It's going to be a hard day."  Juror 29 responded, "Yes, I called in because I thought it would be a rough day.  I don't know if I'll be able to view those pictures."  Although defense counsel then moved for a mistrial because Juror 29 "talked to one of the jurors about the pictures, and it's going to be rough," the prosecutor argued that "there is really nothing that could have prejudiced the other jurors other than the same predisposition that they came into Court with yesterday before they were voir dired."

The district court denied the motion for a mistrial and also refused to excuse Juror 29 or any other juror.  In a post-trial memorandum explaining his decision, the district judge noted:

The views that [Juror 29] expressed in his phone call and during questioning regarding his call were his inability to actually witness the child pornography.  There was no dispute of fact as to whether the material was child pornography, and the issue that was before the jury was whether or not Mr. Shepard in fact knowingly viewed the material.  Thus, when considering [Juror 29's] responses during voir dire, the phone call, and his questioning regarding his phone call, he never stated that he would not be able to impartially determine whether or not the

defendant viewed this material, only that the images and videos caused him severe discomfort.

As indicated, [Juror 29's] response was likely elicited by the defense counsel's opening remarks saying how disgusting and horrendous the material was. However, since the concerns expressed by the juror were over viewing material which was in support of facts that were not in dispute, the Court found that [Juror 29] could fulfill his commitment as a juror. Thus, when considering that dismissing [him] would result in having no alternate jurors on the panel, plus the possibility that one or more jurors might also ask to be excused based on the nature of the evidence if [Juror 29] was excused, the Court exercised its discretion and decided not to *sua sponte* excuse [him], and concluded that the defendant's oral motion for a mistrial should be and was denied.

Following presentation of the evidence by both the government and the defense, the jury found the defendant guilty as charged. He now appeals his conviction and sentence, continuing to assert his innocence and to dispute the legal sufficiency of the evidence introduced to prove his guilt. Because we conclude that seating Juror 29 was was an abuse of discretion on the part of the district court that requires remanding the case for retrial, we need not address the validity of Shepard's conviction and sentence.

## DISCUSSION

The principle of law is well established that the Sixth Amendment's right to a trial by jury "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). A juror's verdict, therefore, must "be based upon the evidence developed at the trial . . . regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Id.* (citations omitted).

The question of whether a trial court has seated a fair and impartial jury "is essentially one of credibility," and "the trial court's resolution of such questions is entitled, even on direct appeal, to 'special deference.'" *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (citation omitted). As this court has held, even a juror's expressed doubts about his or her impartiality "does not necessarily entail a finding of actual bias." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001). As examples, the court in

*Hughes* cited *Patton*, 467 U.S. at 1032, *Murphy v. Florida*, 421 U.S. 794 (1975), *United States v. Rigsby*, 45 F.3d 120 (6th Cir. 1995), and *United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984), all cases in which at least one juror initially expressed preconceived notions regarding a defendant's guilt or in which other information known by the jurors might have cast doubt on their ability to render an objective, impartial verdict. In this case, the district court exercised its discretion to hold that the circumstances did not require a mistrial, once the court had seated the juror in question and the jury had been sworn.

The parties' arguments regarding Shepard's motion for a mistrial focus on whether Juror 29's comments to a fellow juror could have prejudiced that second juror. However, we review a district court's denial of a motion for a mistrial only for an abuse of discretion. *United States v. Howard*, 621 F.3d 433, 458 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 1623 (2011). Absolutely nothing in the appellate record indicates that Juror 29's innocuous comments to the other juror that "it would be a rough day" or that he was not sure he would "be able to view those pictures" resulted in prejudice so obvious that we should find an abuse of discretion by the district court in holding otherwise. In fact, the questioning during *voir dire* and the statements made by defense counsel during opening argument indicated that the images and videos to be presented to the jury were "horrendous," "disgusting," could make one sick to one's stomach, and make the case "so difficult." Against such a backdrop, Juror 29's comments to the other juror did not inject any information or context into the trial or into the jury room that was not already conceded by the defendant himself. We conclude that the denial of the motion for a mistrial was not improper.

On the other hand, it is equally clear that Juror 29 should not have been permitted to sit on Shepard's jury. There was, for example, no effective rehabilitation of Juror 29 in this case. He had responded honestly to a jury questionnaire by admitting that "the fact that the defendant is charged with crimes involving sexually explicit materials [would] cause [him] to be predisposed either for or against the defendant or the government." He followed up that admission during *voir dire* by stating that "just the

nature of the case" would cause him to view the defendant in a different light. It is true that the district court then elicited from Juror 29 responses indicating that, if chosen as a juror, he would "accept the responsibility to decide the facts in dispute" and would "follow the law as [the judge] instruct[ed]." Juror 29 also claimed that he did not "know of any reason why [he] could not be fair and impartial in this case" and was, therefore, accepted and sworn in as a juror. Subsequently, however, he informed the district court that further reflection led him to the inevitable conclusion that, in fact, he could *not* fulfill all the responsibilities imposed upon him as a juror in this case.

On the morning after being sworn in as a member of the jury, Juror 29 stated unequivocally that he would not be able to look at any images or videos of child pornography that were introduced into evidence. In fact, he went so far as to advise the district judge that he would close his eyes when such evidence was shown.

In his memorandum opinion explaining why he did not excuse Juror 29 from the panel, the district judge rationalized that it was not necessary for the juror to observe the pornographic images because neither party disputed that the images and videos should be classified as child pornography. Therefore, the district court concluded, the jury's primary function in this prosecution was to determine only whether Shepard knowingly accessed those images and videos, an exercise that the court apparently thought would not require viewing the visual evidence. On one level, that decision is understandable. The district judge had conducted a lengthy *voir dire* and had effectively exhausted the available jury pool. By dismissing Juror 29, the court risked providing an opportunity for other jurors to have themselves excused from service because of the nature of the evidence to be presented.

Nevertheless, the role of the district judge is not to gloss over serious issues for the sake of preventing additional work for the court. Rather, in a criminal trial, the judge is entrusted with the responsibility of ensuring that the constitutional rights of the accused are safeguarded from the whims of public opinion, prejudice, and expediency. Here, despite his earlier pronouncement that he could be fair and impartial in serving on Shepard's jury, Juror 29 later informed the court that he had serious doubts about his

ability to do so.  Although the district court sought to frame those doubts merely in terms of an ability to view certain evidence, Juror 29's's comments on the morning that evidence was actually presented were much more troubling.  In fact, when asked by the prosecutor whether he could carry out his obligation "so that the government and the defendant can both have a fair and impartial jury," Juror 29 responded that he wished he could but did not think he would be able to do so.  Instead, he expressed without qualification his belief that child pornography was evidence of "the lowest part of humanity" and is "just disturbing."  He concluded his explanation by reiterating that he had stated on the jury questionnaire that he would be prejudiced against the defendant because of Shepard's alleged contact with child pornography and that it would be difficult for him to overcome that prejudice.

Fundamentally, the situation that the district court faced reflected some indication by Juror 29 that he could not decide the case fairly and impartially, as well as a clear indication that he could not perform his constitutional duty to "lay aside his impression or opinion and render a verdict *based on the evidence presented in court*." *Irwin*, 366 U.S. at 723 (emphasis added); *see also Skilling v. United States*, 561 U.S. 358, ___, 130 S.Ct. 2896, 2925 (2010).  In the context of jury deliberation, courts have found just cause for dismissal when a juror "violates the sworn jury oath and prevents the jury from fulfilling its constitutional role."  *United States v. Boone*, 458 F.3d 321, 329 (3rd Cir. 2006); *see also United States v. Baker*, 262 F.3d 128, 131 (2nd Cir. 2001). It seems clear that if violation of the oath impermissibly taints the verdict at the deliberation stage, violation at an earlier point is equally problematic.

Whether Juror 29 could have been rehabilitated is a question that must remain unanswered.  Following his expression of an inability to rise above his disgust toward and prejudice against a defendant found with child pornography on his computer, the district judge did not take the opportunity to explore Juror 29's opinions in greater detail or "establish record support for the claim that [Juror 29] was able to cast aside [his] opinion and render a verdict based on the evidence presented in court."  *Hughes*, 258 F.3d at 459.  Instead, the district court turned its attention to the question of whether

Juror 29 had communicated those views to other members of the jury.  Thus, as in *Hughes*, "because [the juror's] declaration was not followed by any attempt at clarification or rehabilitation, there is no ambiguity in the record as to [his] bias."  *Id.*

In light of this evidence of bias and inability to follow the dictates of the oath, we conclude that the district court abused its discretion in denying Shepard's request to have Juror 29 removed from the jury.  In order to preserve the sanctity of the defendant's Sixth Amendment right to be tried by a fair and impartial jury, it thus becomes necessary to reverse the defendant's conviction, vacate his sentence, and remand this matter to the district court for a new trial.  *See id.* at 463 ("Failure to remove biased jurors taints the entire trial, and therefore . . . [the resulting] conviction must be overturned." (citation omitted)).

## CONCLUSION

For the reasons set out above, we VACATE the judgment of the district court and REMAND this case for a new trial.