NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0098n.06

Case No. 16-5454

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 08, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| WENDELL KEITH HALL, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

Before: MERRITT, MOORE, and STRANCH, Circuit Judges.

**MERRITT, Circuit Judge.** Defendant Wendell Hall appeals his bribery conviction under 18 U.S.C. § 666(a)(2). On appeal, Hall claims that the district court made several erroneous evidentiary determinations that deprived him of his right to a fair trial. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

**I. Background**

At all relevant times, Hall owned and operated several small, family-run companies engaged in coal mining in eastern Kentucky. Kelly Shortridge, a mining inspector employed by Kentucky's Division of Mining Reclamation and Enforcement, was assigned to oversee inspections of Hall's mining operations between 2009 and 2011. Those inspections were

intended to ensure that Hall's operations were compliant with all state and federal mining regulations.

An investigation into allegations that Shortridge had attempted to use his status as a state investigator to extort money from Hall revealed that Hall had engaged in several large financial transactions with Shortridge between 2009 and 2010. Most notably, Hall paid DKJ Consulting, a company owned entirely by Shortridge, more than $40,000 in exchange for "consulting services" that were never provided. Hall also agreed to serve as a cosigner on a loan to Shortridge that was used to purchase a car for Shortridge's teenage son. In satisfaction of his obligations as a cosigner on the loan, Hall directed two of his employees to make several payments on the loan when Shortridge was unable to do so.

While he was receiving money from Hall, Shortridge overlooked many obvious regulatory violations at Hall's various mining operations. Specifically, Shortridge would give Hall's businesses extra time to remedy violations of reclamation laws in order to avoid citations and substantial fines. He also failed to issue a citation for coal augering that was plainly being conducted outside of the relevant augering permit. Shortridge testified that these actions were influenced by the payments he received from Hall and that Hall understood that the payments were made in order to ensure that his businesses would receive favorable treatment.

Based on these facts, a grand jury issued an indictment charging Hall with bribing a state official in violation of 18 U.S.C. § 666(a)(2). During a week-long trial, the United States presented the testimony of Shortridge and several of Hall's employees—including his estranged wife—along with various items of documentary evidence. Hall conceded at trial that he made the payments in question, but contended that they were not made with the intent of securing

favorable treatment for his mining operations.  The jury returned a guilty verdict, and Hall was sentenced to 84 months in prison.

This appeal followed.

## II.  Discussion

### A.  Hall's Wife's Testimony

Hall's first argument on appeal is that the district court denied him his due process right to a fundamentally fair trial when it denied his motion for a mistrial when his estranged wife testified that he had coded "under-the table kickbacks" as "consulting" fees previously. We affirm the district court's denial of Hall's motion because the testimony was of relatively minor importance in the case and was followed by an immediate limiting instruction.

Our review of a district court's denial of a motion for mistrial is limited to abuse of discretion.  *United States v. Shepard*, 739 F.3d 286, 292 (6th Cir. 2014).  To assess whether a district court abuses its discretion by proceeding with a trial in light of improper testimony, we first ask if the testimony at issue was somehow improper.  *United States v. Howard*, 621 F.3d 433, 458–59 (6th Cir. 2010).  If it was, we then ask if the testimony "was so clearly improper and prejudicial to the defendants that the harm could not be erased by any instruction which the court might give."  *United States v. Smith*, 601 F.3d 530, 538 (6th Cir. 2010).  To answer that question, we examine the five *Zuern* factors:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003).

As part of its case-in-chief, the United States called Stephanie Hall, the Defendant's estranged wife, to testify to the authenticity of and circumstances surrounding a $25,000 check issued by one of the Defendant's business entities to DKJ Consulting. While Ms. Hall was able to identify her signature on the check, she did not remember why the check had been issued. Based upon the company's accounting records, she testified that it had been classified as a payment for "consulting" services. In response to a question about how that particular classification was used, Ms. Hall stated: "A lot of—I remember an incident where it was under consulting but it was more like an under-the-table kickback." Mr. Hall's counsel immediately objected on the basis of the marital communications privilege and the rule against character evidence; he also requested a mistrial. At sidebar, the district judge refused to declare a mistrial. Instead, she instructed the jury to "disregard the witness's last statement" and allowed the United States to continue questioning the witness.

Hall argues that the judge's limiting instruction was insufficient to protect his right to a fair trial because the case "turned on the very nature of the statement made by [Ms. Hall]." Appellant Br. at 18. We disagree. Even assuming that the testimony was improper,[1] the *Zuern* factors support the district court's decision to deny Hall's motion. First, Ms. Hall's testimony was unsolicited; in response to a question about Mr. Hall's typical use of the term "consulting" in the context of his business's record-keeping, Ms. Hall stated that he had used the term before to conceal illegal kickback payments. Second, the Government's questioning up until the testimony in question was reasonable; it was clearly intended to authenticate a $25,000 check to DKJ Consulting and to develop relevant context surrounding the payment. Third, the judge immediately issued a clear and forceful limiting instruction to the jury after ruling on Hall's

---

[1] The district court decided to exclude the testimony under the rule against character evidence since Ms. Hall had stated she did not remember why the specific check at issue had been written. *See* Rule 404(b)(1). But the district court also noted that the question was "probably proper" absent that earlier statement by the witness.

objection, stating: "Members of the jury, you will disregard the witness's last statement. Don't consider it for any other purpose." Fourth, there is no evidence that the Government pursued its line of questioning in bad faith. And finally, contrary to Hall's assertion, the remark was a very small part of the evidence against him. In addition to this one remark, the jury also heard the testimony of Shortridge himself, who had already pleaded guilty to accepting bribes in violation of 18 U.S.C. § 666. His testimony clearly indicated that he and Mr. Hall had an understanding that the payments were made in order to ensure his businesses received favorable treatment. Similarly, the jury also heard the testimony of several other individuals employed by Hall's businesses who corroborated Shortridge's testimony against Hall. Since all of the *Zuern* factors support the district judge's decision to deny Hall's motion for a mistrial, we refuse to disturb that ruling on appeal.

### B. Hall's Attempt to Cross-Examine His Wife

Hall next argues that the district court deprived him of his right to cross-examine the witnesses against him when it cut short his attempt to question his estranged wife about her ownership of a coal refuse company. We reject this argument because the district court's decision to limit the scope of cross-examination was reasonable under the circumstances.

The Confrontation Clause of the Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. And while that right entitles defendants to impeach the witnesses against them through cross-examination, the right is "not absolute." *United States v. Cunningham*, 679 F.3d 355, 384 (6th Cir. 2012). Trial judges have broad discretion to limit the scope of cross-examination to relevant topics that are not duplicative or confusing. *United States v. Callahan*, 801 F.3d 606, 623 (6th Cir. 2015).

Accordingly, we review the district court's decision to limit the scope of Hall's cross-examination only for abuse of discretion. *Id.*

At trial, Hall attempted to paint his wife as biased against him by cross-examining her about her ownership of a company that sold "coal refuse" generated on a piece of property that she owned jointly with her husband. The goal of the cross-examination was apparently to demonstrate that Ms. Hall had a pecuniary interest in the Defendant's conviction by virtue of her ownership of a firm that competed with his own businesses. After allowing the defense to ask Ms. Hall several relatively complicated questions about the business and its activities, the district court sustained the Government's objection to the questioning on relevance grounds. In justifying her conclusion, the district judge reasoned that the evidence was irrelevant to proving Ms. Hall's bias against her husband because Mr. Hall stood to benefit from his wife's success with her business since profits from jointly owned land generally must be distributed equitably among the cotenants. Moreover, the district court noted that further questioning would likely have confused the jury because it would have required discussion of "unrelated litigation"—i.e., the ongoing divorce proceedings between the defendant and the witness.

Given the limited nature of Ms. Hall's testimony in the case, the district court's decision to limit the scope of Hall's cross-examination of his wife was reasonable. While the district court's suspicion that Mr. Hall had a right to a portion of any profits earned by Ms. Hall's business was not beyond dispute, Hall's cross-examination would have been entirely irrelevant if it were true. Moreover, the district court was correct to conclude that Hall's line of questioning, if continued, would have confused the jury since it would have required a detailed account of the ongoing, but unrelated, divorce proceedings. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing

the issues . . . ."). Since the trial court's decision had the effect of limiting cross-examination to relevant topics that would not unduly confuse the jury, it did not amount to an abuse of discretion. Accordingly, we reject Hall's argument to the contrary.

### C. Proof of Hall's Motive to Bribe Shortridge

Hall's third claim on appeal is that the district court erroneously suppressed evidence of a 2014 settlement agreement indemnifying Hall of any liability associated with noncompliance with mining regulations. We hold that the district court was correct to exclude the evidence on relevancy grounds.

Only relevant evidence is admissible in federal court. *See* Fed. R. Evid. 402. The Federal Rules of Evidence deem evidence to be relevant so long as it has "any tendency to make a fact more or less probable than it would be without the evidence" and that fact is "of consequence" in deciding the case. Fed. R. Evid. 401. Even relevant evidence may be excluded when "its probative value is substantially outweighed by a danger of . . . misleading the jury." Fed. R. Evid. 403. The determination of the relevance and admissibility of evidence under Rules 401 and 403 is left to the sound discretion of the district courts, and the district court's decision on those issues is "afforded great deference" on appeal. *United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010). Accordingly, we review the district court's decision to suppress the evidence in question for abuse of discretion. *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015).

At trial, Hall sought to introduce a lengthy and complicated 2014 settlement agreement requiring his mining contractor to indemnify him for the cost of any fines or citations for noncompliance with relevant mining regulations on a specific piece of property. In a sidebar discussion, Hall's attorney indicated that they sought to introduce the agreement to prove that

Hall had no motive to bribe Shortridge because he would not be financially responsible for any citations that Shortridge might have issued. The court ultimately agreed with the Government and excluded the agreement under Rule 403 because it posed a substantial risk of "unduly confusing the jury" because it was executed three years after the alleged bribes were paid, it involved other companies not party to the litigation, and it was duplicative of an already-admitted terms sheet indicating the contractor's intent to indemnify Hall's companies. It seems clear that the agreement was of little to no probative force in light of the other evidence regarding indemnification and that the complicated, 50-page agreement posed a substantial risk of confusing the jury. Accordingly, we will not second-guess the district court decision to exclude the evidence under Rule 403.

### D. Reference to Hall's Refusal to Cooperate with an Earlier State Investigation

Hall's final argument is that the United States committed prosecutorial misconduct when it mentioned his refusal to be interviewed by a state investigator in its closing arguments. We affirm the district court's ruling because Hall waived his purported assertion of the privilege.

As part of the State of Kentucky's inquiry into allegations against Shortridge, a state investigator contacted Hall to schedule a meeting to discuss Hall's past interactions with Shortridge. Hall responded by text message:

> Respectfully Mr Wager [sic]
> No comments were made directly to me
> I am in the coal business and do not want to be interviewed and politely decline your offer
> Mr Thacker my partner with Trey K Mining & Electric gave you all the info you need
> I have no further comments
> Thank You for the invitation

In its rebuttal closing arguments, the United States made two specific references to Mr. Hall's interactions with the investigator: First, the prosecutor asked: "Why[,] when we talk about

intent[,] did Mr. Hall refuse to be interviewed by the Office of the Inspector General?" After a brief colloquy on that line of argument, the prosecutor again asked (with the court's permission): "[W]hy was it Mr. Hall didn't want to submit himself to pointed questions from the OIG?" Hall moved for a mistrial on the grounds that these references to his pre-arrest refusal to speak with investigators violated his privilege against self-incrimination under the Fifth Amendment.

The privilege against self-incrimination protected by the Fifth Amendment permits a witness to refuse to make "any disclosures that the witness reasonably believes could be used in a criminal prosecution." *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000) (quoting *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972)) (internal quotation marks omitted). The protection has been given "a broad scope" and applies "'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" *Id.* (quoting *Kastigar*, 406 U.S. at 444–45). An individual need not utter any specific magic words to invoke the privilege; all that is required is language that makes his intent to do so "clear and unambiguous." *United States v. Calvetti*, 836 F.3d 654, 661 (6th Cir. 2016) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 380–83 (2010)). However, an individual waives the privilege—even after expressly invoking it—by "voluntarily, knowingly[,] and intelligently" making a disclosure to the government despite the claim of privilege. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

Even assuming that the privilege against self-incrimination is applicable to informal communications like the one at issue here and that Hall successfully invoked the privilege when he stated that he "[did] not want to be interviewed," that he "politely decline[d]" the investigator's offer to meet with him, and that he "had no further comments" on the matter,[2] Hall's additional statements about the case indicate that he intentionally and knowingly waived

---

[2] We express no opinion on these questions and do not address them here since they are not necessary to our decision today.

any purported assertion of privilege. Instead of invoking the privilege and remaining silent, Hall affirmatively volunteered information to the investigator. Without any additional prompting, Hall stated that "[n]o comments were made to [him]" by Shortridge and that his business partner had given the investigator "all the info [the investigator] need[ed]." In response to a logistical question about his availability to discuss his contacts with Shortridge, Hall volunteered that the two had not had any meaningful interactions and then adopted the answers provided by his business partner. Those statements alone may be sufficient to justify a finding of waiver here since they indicate Hall's purpose and intent to affirmatively provide information to the investigation, but Hall did not stop there. Indeed, he went on to testify on his own behalf about the text message at trial. As this court has previously noted, "a defendant waives his Fifth Amendment immunity from giving testimony by offering himself as a witness." *Combs*, 205 F.3d at 280–81 (citing *Raffel v. United States*, 271 U.S. 494, 496–97 (1926)). Thus, Hall waived any assertion of privilege made in the message in question by affirmatively providing the investigator with information and by testifying about his statements at trial. Accordingly, we hold that the Government's mention of Hall's refusal to be interviewed was not improper.

For the reasons stated above, we **AFFIRM** the judgment of the district court.