IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

## GEORGE WASHINGTON MATTHEWS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lake County**
**No. 13-CR-9837      R. Lee Moore, Jr., Judge**

_____

### No. W2018-00966-CCA-R3-PC

_____

The Petitioner, George Washington Matthews, appeals from the Lake County Circuit Court's denial of his petition for post-conviction relief, arguing that trial counsel provided ineffective assistance by: (1) failing to use a peremptory challenge to remove a juror who knew that the Petitioner had been an inmate at the penitentiary; (2) failing to object to testimony that the Petitioner previously had been incarcerated; and (3) failing to advise the Petitioner of the State's settlement offer of three years. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Noel H. Riley II, Dyersburg, Tennessee, for the Appellant, George Washington Matthews.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Factual Background.** This case concerns the Petitioner's attempt to smuggle contraband into the Northwest Correctional Center in Lake County, Tennessee, on February 17, 2013. Following his arrest, the Petitioner was indicted for one count of possession of over one-half ounce of marijuana with intent to sell or deliver and two counts of attempting to introduce contraband into a penal facility. State v. George Washington Matthews, No. W2015-02500-CCA-R3-CD, 2017 WL 347796, at *1 (Tenn. Crim. App. Jan. 24, 2017), perm. app. denied (Tenn. Apr. 13, 2017).

The facts presented at trial showed that just after midnight on February 17, 2013, Deputy Thomas Hollowell found the Petitioner and another man lying in a ditch approximately 100 to 150 yards from the eastern boundary of the Northwest Correctional Center ("the prison") and near the prison's greenhouse and firing range. Id. Deputy Hollowell said that the firing range was a "hotspot" for individuals smuggling contraband into the prison. Id.

At the time that Deputy Hollowell discovered the Petitioner and this other man, he also observed two large duffle bags in the ditch that were one to two feet away from the Petitioner. Id. The duffle bags contained tobacco, twenty-three cell phones with batteries and chargers, and approximately 390 grams of marijuana in thirteen individual packages. Id. Deputy Hollowell acknowledged that he did not observe the Petitioner or the other man carrying or handling these duffle bags and admitted that there were no fingerprints or other physical evidence linking the two men in the ditch to these bags. Id.

Lieutenant David Ables, an investigator at the prison, testified that the prison had a long history of problems with contraband. Id. at *2. He noted that some parts of the prison were enclosed with fences, rather than a wall, and that some inmates were allowed to go outside the prison walls to perform maintenance on the prison grounds. Id. Lieutenant Ables said that the area where the Petitioner and the other man were found, while not accessible to inmates, was a "well-known drop site" for contraband. Id. He also said that other "drop spots" for contraband included the prison's greenhouse and firing range, which were one-half to three-quarters of a mile away from the location where the two men were found. Id. In addition, he said an area about 200 yards from the Petitioner's location was also a place that was accessible to inmates. Id. Lieutenant Ables noted that the Petitioner had been an inmate at the prison two weeks prior to being found in the ditch with the duffle bags. Id. Following a jury trial, the Petitioner was convicted of the offenses as charged, and the trial court imposed an effective sentence of twelve years. Id.

On direct appeal, the Petitioner argued that the evidence was insufficient to sustain his convictions, that the trial court erred in allowing testimony regarding the Petitioner's recent incarceration, and that his indictment was defective. Id. This court affirmed the judgments of the trial court, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Id. at *10.

Thereafter, the Petitioner filed a petition for writ of habeas corpus, challenging the sufficiency of two counts of the indictment charging him with attempting to introduce contraband into a penal facility. George Washington Matthews v. State, No. M2016-01011-CCA-R3-HC, 2017 WL 2472368, at *1 (Tenn. Crim. App. June 8, 2017), perm. app. denied (Tenn. Sept. 21, 2017). The habeas corpus court summarily dismissed the

petition, and the Petitioner appealed. Id. The State then filed a motion to affirm the trial court's order pursuant to Rule 20 of the Rules of the Court of Criminal Appeals, which this court granted. Id. at *1-2.

**Post-conviction.** On October 23, 2017, the Petitioner filed a pro se petition for post-conviction relief, alleging, in pertinent part, that trial counsel was ineffective in failing to strike prison correctional officers from the jury. Following the appointment of counsel, the Petitioner filed an amended petition, wherein he made the additional claim that trial counsel was ineffective in failing to advise him of a three-year settlement offer shortly before trial.

At the post-conviction hearing, the Petitioner testified that during voir dire he noticed that Natasha Miller, a correctional officer at the prison during his prior incarceration, was in the pool of potential jurors. The Petitioner said he informed trial counsel about Juror Miller and asked him to remove her from the jury, but trial counsel told him that he had no peremptory challenges left, and Juror Miller was ultimately seated on the jury. The Petitioner said he later learned at the motion for new trial hearing that trial counsel still had three peremptory challenges remaining when he asked him to remove Juror Miller. The Petitioner claimed that Juror Miller was biased against him because she knew him from his time in prison and would often come to his prison pod and "rant and rave" about tobacco and marijuana, which were the contraband at issue in his trial.

The Petitioner said that following his conviction, he learned that the State had communicated an offer of three years to trial counsel. He said that although he had been informed of an eight-year and a six-year offer, trial counsel never gave him the opportunity to accept an offer of three years. The Petitioner stated that on the morning of trial, he asked trial counsel to talk to the prosecutor about going below the six-year offer, and trial counsel refused, claiming the court would not allow it because it was "too late." The Petitioner said that had he been informed of a three-year offer, he would have accepted it.

On cross-examination, the Petitioner stated for the record that he was African American. He noted that trial counsel used a peremptory challenge to strike Ms. Horton, an African American, because trial counsel had sued her in the past. The Petitioner said Juror Miller was African American and that his jury was composed of two African American jurors and ten Caucasian jurors. The Petitioner noted that although trial counsel struck one African American juror, he allowed Juror Miller, "a correctional officer [who] worked at the prison and was still an employee of the prison during the time of [his] trial," to sit on his jury.

The Petitioner said that when the State asked if any of the potential jurors knew the Petitioner, Juror Miller replied that she had seen him before in the prison. However, the Petitioner acknowledged that when the trial court asked Juror Miller if she could make a fair determination of the facts and the law, Juror Miller responded affirmatively. The Petitioner claimed that Juror Miller was more likely to believe that he committed the crimes for which he was charged because she knew he had already served time in prison.

The Petitioner acknowledged that later at trial, the court allowed the State to introduce proof that he had been incarcerated at the prison two weeks prior to being arrested in this case. When asked why Juror Miller would be any more prejudiced against him than any other juror who suddenly became aware that he had served time in prison shortly before his arrest, the Petitioner asserted that the trial court had entered an order a year prior to trial stating that "no one was to come in this trial and mention that [the Petitioner had] been in that prison because it was too prejudicial to the outcome of the case." When the State asked him about the trial court's later ruling at trial to allow evidence of his prior incarceration over trial counsel's objection, the Petitioner claimed that he did not recall trial counsel objecting to this evidence and did not know what the attorneys and the trial court discussed at the bench following the court's ruling because he was sitting at counsel's table.

The Petitioner acknowledged that at the time of his trial, he had already received a sentence of eight years in Davidson County, eight years in Rutherford County, and twelve years in Tiptonville for unrelated offenses. He claimed that he asked trial counsel to request an offer of less than six years because he heard that his codefendant had received probation for the same charges. He also claimed that if he had received a three- or four-year sentence served consecutively to the Rutherford County sentence, that sentence would have been much better than the sentence he actually received. Although the Petitioner denied telling trial counsel that he was not interested in receiving a sentence served consecutively to his Rutherford County sentence, he did acknowledge telling trial counsel that he wanted a sentence served concurrently to his Rutherford County sentence. The Petitioner claimed that trial counsel never informed him of any offer from the State involving a concurrent sentence. He said trial counsel told him of an eight-year offer with a release eligibility of 45% or 60% and a six-year offer with a release eligibility of 60% and admitted that both of these offers were to be served consecutively to his prior sentences because of his criminal history. The Petitioner asserted that he would have gladly accepted any offer involving a concurrent sentence or "a three-year sentence . . . r[u]n concurrent with [the] Rutherford County [sentence]."

Trial counsel testified that he had been licensed to practice law for twenty years and had primarily worked in criminal defense since 2012. He said he began representing the Petitioner shortly before his preliminary hearing and that the Petitioner's case was set

- 4 -

for trial two or three times, which meant that he spent a substantial amount of time preparing this case. Prior to trial, trial counsel filed a motion in limine to prevent the State from making any reference to the fact that the Petitioner had previously served time in prison, which was initially granted by the trial court. However, he said that at trial, the court reconsidered its ruling and allowed the State to introduce proof showing that the Petitioner had been incarcerated at the prison just a couple of weeks before he was arrested in this case. Despite this new ruling, the court, at trial counsel's urging, agreed to exclude a statement made by the Petitioner during the booking process, wherein he told the officers that they had "just blown a $25,000 deal."

Trial counsel said that while preparing for the Petitioner's trial, he talked to the Petitioner on the phone, met with him in court, and visited him twice at the jail. He said that the Petitioner believed that there was no evidence of his guilt because there were no receipts, fingerprints, or DNA connecting him to the duffle bags of contraband. Trial counsel said that whenever he talked to the Petitioner about the circumstantial proof linking him to the duffle bags, the Petitioner claimed that this evidence was insufficient to convict him. Trial counsel noted that the Petitioner had been found in the ditch near the duffle bags in an area close to the prison on a cold, mid-February night at 1:00 a.m.

Trial counsel said he explained to the Petitioner that his twenty-seven prior convictions made him a career offender for the purposes of sentencing. Although he could not recall all of the State's offers, he did remember an offer of eight years and an offer of six years and asserted that "almost all of them were always going to be consecutive" to the Petitioner's prior sentences. He said that any offer involving a consecutive sentence was a "nonstarter" for the Petitioner and that each time he mentioned an offer with a consecutive sentence, the Petitioner would "become agitated and would basically say . . . you're not trying hard enough."

Trial counsel also remembered receiving an offer approximately two weeks prior to trial that was "substantially less" than the earlier offers. Trial counsel thought that this offer involved a consecutive sentence. He stated, "I heard later that it might [have] be[en] three [years]. I don't actually have an independent recollection of three [years]." When asked what he did with that offer, trial counsel replied that whenever he receives an offer, he immediately notifies the client "because it stops [him] from spending more time on a case that just suddenly gets settled." He added, "So, I'm quite sure, if I received an offer, I would have taken it to [the Petitioner] pert [sic] near immediately."

Trial counsel said that while he did not recall the exact length of this last offer, he "had some hope that maybe [it] would be something that [the Petitioner] would be interested in." He also recalled "pulling [the Petitioner] out of [his] pod" and briefly discussing this last offer with him. However, when trial counsel presented this last offer,

the Petitioner "[i]mmediately transitioned to there's no physical evidence, there's no DNA, there's no evidence and . . . I shouldn't be convicted." He said the Petitioner was "an opinionated individual" who "wasn't interested in what [he] thought," so any attempts to talk about an offer were difficult because the discussion "always transitioned over to how are you going to defend this."

Trial counsel said, at that point, he took another opportunity to see if he could receive a two-year offer from the State, but the State refused. He did not inform the Petitioner of the State's refusal of the two-year offer because the Petitioner had already rejected the three-year offer, and the two-year offer was not "on the table," so there was "nothing to take to [the Petitioner]."

When asked why he did not use a peremptory challenge to remove correctional officer Natasha Miller, trial counsel said that during voir dire, he was very careful not to disclose that the Petitioner had been incarcerated before. He said Juror Miller indicated that she did not seem to know the Petitioner. He also noted that he had already struck Ms. Horton, an African American, because he had sued her more than once and did not want to "los[e] even more diversity" by striking Juror Miller, who was also African Amercian. Trial counsel said he believed that Juror Miller would be interested in the Petitioner's case and would carefully listen to the facts. He asserted that Juror Miller's job did not necessarily bias her against the Petitioner because the fact that she worked at the prison did not "necessarily mean that [she was] always on the prison's side."

Trial counsel did not recall the Petitioner asking him to strike Juror Miller from the jury. He said that he had used five peremptory strikes and that counsel for the Petitioner's codefendant, who was being tried jointly, had used four or five peremptory strikes but that the State had not used any of its peremptory strikes at that point during jury selection. Trial counsel said that because the Petitioner and his codefendant were being tried jointly, the State had sixteen peremptory strikes and that "if we ran out of strikes, . . . the State was going to have the ability just to completely remake the jury." Trial counsel was also "cognizant of the fact that there were people who were coming on to the jury, that [he] didn't feel like, just based on their demeanor and the way they were presenting themselves, [he] didn't feel like they would give [the Petitioner] a fair shake." He noted that there were at least three individuals in the front row that he did not want on the Petitioner's jury. Trial counsel said that he and the codefendant's attorney conferred with one another about the use of their peremptory strikes but that neither he nor codefendant's counsel, who also had strikes remaining, chose to remove Juror Miller from the jury.

On cross-examination, trial counsel recognized that the fact that the Petitioner was arrested outside the prison just two weeks after being incarcerated there was

"extraordinarily damaging" to the Petitioner's case.  Consequently, trial counsel said he "wanted to try to keep out as much of that as possible" and asserted that "in some ways, [he] was able to."  Trial counsel said that the reason he did not object to Officer Ables' testimony that the Petitioner had just been released from prison at the time of his arrest was because the trial court had already ruled that evidence of the Petitioner's recent incarceration was admissible.  He noted that although he could have objected to protect the record, he did not object because the trial court had ruled that this evidence was admissible.

Trial counsel reiterated that "we had plenty of offers, but . . . all of them were always consecutive."  He also said that near the end, he received one offer that was "reasonably low," and he had "some hope that [the Petitioner] might be interested in it," but "he wasn't."  Trial counsel also said he did not believe that Juror Miller was bias in favor of the prosecution in the Petitioner's case.  He said that he took Juror Miller at her word when she said she did not know the Petitioner.

At the conclusion of the post-conviction hearing, the trial court made several oral findings of fact and conclusions of law.  As to the claim that trial counsel was ineffective in failing to strike Juror Miller, the court stated as follows:

> [T]he record is clear that the [Petitioner's codefendant] used five challenges, had three remaining.  The record is also clear that [trial counsel] used five challenges, had three remaining.  The record is equally as clear [that] each of you had eight challenges.  The State had sixteen challenges and [had] used none, which creates a situation that both defense counsel have to take into account, and that is, if they use their final three challenges and then the State starts using peremptory challenges, the complete character of the jury could be remade.  It's a legitimate consideration as far as saving some of your peremptory challenges, and it's part of trial strategy and is not ineffective assistance of counsel. . . .  [A]nd the issue dealing with having a prison employee left on the jury . . . is the same type of thing that I've just gone over, plus, there's no evidence in the record to prove prejudice.

Regarding the Petitioner's claim that trial counsel failed to advise him of the three-year settlement offer, the court held that counsel was not ineffective, stating, "The proof is clear to the Court that you were never interested in settling the case.  You indicated—I think felt from the very start to the end, that you could beat the charge, and then that did not happen."

On May 3, 2018, the post-conviction court entered its order denying relief. In it, the court specifically accredited trial counsel's testimony at the post-conviction hearing as to each of the claims raised. The court held that the Petitioner had failed to satisfy his burden of proving by clear and convincing evidence that "[trial counsel's] performance fell below the range of competence demanded of attorneys in criminal cases" or that "but for the[se] alleged deficiencies . . . there is a reasonable probability that the result of his trial would have been different, or as it relates to the late plea offer, that he would have accepted the plea offer rather than going to trial . . . ." Following entry of this order, the Petitioner filed a timely notice of appeal.

## **ANALYSIS**

The Petitioner contends that trial counsel provided ineffective assistance in failing to use a peremptory strike to remove Juror Miller, in failing to object to testimony regarding his prior incarceration at the prison, and in failing to advise the Petitioner of the State's settlement offer of three years. We agree with the post-conviction court that the Petitioner is not entitled to relief on these claims.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**I. Juror Natasha Miller.** The Petitioner argues that trial counsel provided ineffective assistance in failing to use a peremptory challenge to remove Juror Miller. He asserts that trial counsel was deficient in failing to strike Juror Miller because she was a guard at the prison and they were not on the best of terms during his incarceration. He claims that trial counsel's failure to strike Juror Miller was prejudicial because it changed the outcome of his case.

Both the state and federal constitutional guarantee an accused the right to trial by an impartial jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. The Tennessee Supreme Court has held, within the context of a direct appeal of juror bias, that "[w]here a juror is not legally disqualified or there is no inherent prejudice, the burden is on the defendant to show that a juror is in some way biased or prejudiced." State v. Caughron, 855 S.W.2d 526, 539 (Tenn. 1993) (citing Bowman v. State, 598 S.W.2d 809, 812 (Tenn. Crim. App. 1980)). Similarly, the Sixth Circuit has concluded that "[b]ecause petitioner's claim for ineffective assistance of counsel is based on his trial counsel's

failure to strike the allegedly biased jurors, petitioner must show that the jurors were actually biased against him." Holder v. Palmer, 588 F.3d 328, 339 (6th Cir. 2009) (citing Hughes v. United States, 258 F.3d 453, 458 (6th Cir. 2001)); cf. Smith v. State, 357 S.W.3d 322, 348 (Tenn. 2011) (holding that in order to prevail on a claim of ineffective assistance of counsel based on counsel's failure to adequately question potential jurors during voir dire, the petitioner must prove that counsel's deficiency resulted in having a jury seated who was actually biased). "Bias in this context is 'actual bias, or bias in fact: the existence of a state of mind that leads to an inference that the person will not act with impartiality.'" Holder, 588 F.3d at 339-40 (citing Hughes, 258 F.3d at 463).

Although not included in the record on appeal, we have taken judicial notice of the transcript of voir dire in this case. During voir dire, the counsel for both parties and the trial court recognized that the prison was a "very large employer" in the area. The court stated that while individuals who were merely employed at the prison would not be automatically excused for cause, the court would "voir dire" them. Juror Miller, in response to questions from the trial court, stated that she was employed at the prison and that she did not know anything about the Petitioner's case. Later, Juror Miller said that she worked as a correctional officer for the prison and that she did not know the Petitioner. At different points during voir dire, the court and trial counsel asked the venire if they could decide the issue of guilt or innocence based solely upon the evidence, and the venire always responded affirmatively.

The proof presented at the post-conviction hearing on this claim showed that Juror Miller worked as a guard at the prison where the Petitioner had been incarcerated prior to his arrest. Although the Petitioner claims on appeal that Juror Miller was biased against him and that trial counsel was ineffective in failing to remove her from the jury, the Petitioner never presented testimony from Juror Miller at the post-conviction hearing.

The Petitioner testified at the hearing that although he asked trial counsel to use a peremptory strike to remove Juror Miller, trial counsel refused, claiming he did not have any peremptory challenges left. The Petitioner claimed that Juror Miller was biased against him because she knew him from his time in prison and often came to his prison pod to "rant and rave" about tobacco and marijuana, the same contraband at issue in his trial. The Petitioner also said Juror Miller was more likely to believe that he had committed the charged offenses because she knew that he had already served time in prison. The Petitioner acknowledged that although the trial court had originally entered an order precluding any mention of his prior incarceration, the court later reconsidered its ruling and allowed the State to introduce evidence that he had been incarcerated at the prison two weeks prior to being arrested in this case.

Although trial counsel acknowledged that he had some peremptory challenges

remaining when Juror Miller was being considered, he testified that he did not recall the Petitioner asking him to remove Juror Miller. Trial counsel explained that he intentionally kept Juror Miller because she did not seem to know the Petitioner and because he believed she would be interested in the Petitioner's case and would carefully listen to the facts. He asserted that Juror Miller's job did not necessarily bias her against the Petitioner because her employment at the prison did not "necessarily mean that [she was] always on the prison's side." Trial counsel also noted that he had already struck Ms. Horton, an African American, because he had sued her and did not want to "los[e] even more diversity" by striking Juror Miller, who was also African American. He said that because the State had not used any of its sixteen peremptory challenges at that point during jury selection, he was concerned that if the Petitioner and his codefendant "ran out of strikes," the State would have "the ability just to completely remake the jury." He also said there were several individuals behind Juror Miller that he did not want to sit on the Petitioner's jury and that neither he nor codefendant's counsel chose to remove Juror Miller from the jury even though they had peremptory challenges remaining. Trial counsel agreed that after the court reconsidered its prior order on the motion in limine, the State was allowed to introduce testimony that the Petitioner had been incarcerated at the prison shortly before his arrest.

In its order denying relief, the post-conviction court specifically accredited trial counsel's testimony at the post-conviction hearing. It noted that "[t]he State had sixteen challenges and [had] used none, which creates a situation that both defense counsel have to take into account, and that is, if they use their final three challenges and then the State starts using peremptory challenges, the complete character of the jury could be remade." The court found that this was a "legitimate consideration" and was "not ineffective assistance of counsel." The court also noted that the Petitioner had failed to show that he was prejudiced by Juror Miller's inclusion on the jury.

We conclude that the Petitioner has failed to show that trial counsel's decision not to remove Juror Miller was deficient or prejudicial. The record shows that trial counsel made a strategic decision not to remove Juror Miller. He believed Juror Miller would listen carefully to the facts, and he was justifiably concerned that the State would use all of its peremptory challenges to remake the jury. In determining whether Juror Miller was actually biased against the Petitioner, we note that the Petitioner failed to present Juror Miller at the post-conviction hearing and failed to present any evidence, other than his bald assertions, to show that she was actually biased against him. Because the Petitioner has failed to establish that trial counsel was deficient in failing to remove this juror or that Juror Miller was actually biased against him, he is not entitled to relief on this claim.

**II. Evidence of Prior Incarceration.** The Petitioner also claims that trial counsel was ineffective in failing to object to Lieutenant Ables' testimony that the Petitioner had

been an inmate at the prison two weeks prior to being found in the ditch with the contraband. The State counters that the Petitioner has waived this issue by failing to include it in his post-conviction petitions, see T.C.A. §§ 40-30-104(d), (e), and waiver notwithstanding, that the Petitioner has failed to show that trial counsel's performance was deficient or prejudicial with regard to this claim. We conclude that although this issue is reviewable on its merits, the Petitioner is not entitled to post-conviction relief.

Although the Petitioner did not explicitly include in his petitions the claim that trial counsel was ineffective for failing to object to testimony regarding his prior incarceration, the Petitioner did generally claim that he received ineffective assistance of trial counsel. See Marlon Yarbro v. State, No. W2017-00125-CCA-R3-PC, 2018 WL 4441364, at *6 (Tenn. Crim. App. Sept. 17, 2018). During the Petitioner's cross-examination at the post-conviction hearing, the Petitioner asserted that Juror Miller should have been removed from the jury because she knew that he had been to prison, which biased her against him. When the State reminded the Petitioner that the trial court had allowed evidence regarding his incarceration at trial, the Petitioner said he could not recall trial counsel objecting to the admission of such proof at trial. Trial counsel later testified that although the trial court granted his motion in limine to preclude any reference to the Petitioner's prior incarceration, the court later reconsidered this ruling and allowed the State to introduce proof of the Petitioner's prior incarceration at the prison just two weeks prior to his arrest.

The record shows when the Petitioner raised this issue during his testimony at the post-conviction hearing, the State never objected on the basis that the Petitioner failed to include this issue in his post-conviction petitions. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."); see also Steven Tyler Nabi v. State, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *2 (Tenn. Crim. App. Apr. 9, 2018) (concluding that an issue was reviewable on its merits when the Petitioner raised the issue at the post-conviction hearing and the State failed to object that the issue was waived because it had not been included in the pro se or amended petition). Had the State objected, the Petitioner could have amended his petition, which the Post-Conviction Procedure Act clearly contemplates and generously allows. See Tenn. Sup. Ct. R. 28, § 8(D)(5). Consequently, we conclude that the Petitioner did not waive his issue regarding trial counsel's failure to object to this evidence.

While this issue is reviewable on its merits, we nevertheless conclude that the Petitioner has failed to establish that trial counsel was ineffective in not objecting to testimony regarding his prior incarceration. Although trial counsel successfully obtained an order precluding any reference to the Petitioner's prior incarceration, the court later

- 12 -

reconsidered its ruling and allowed the State to present testimony that the Petitioner had been incarcerated at the prison shortly before his arrest. Trial counsel explained that the reason he did not object to Officer Ables' testimony about the Petitioner's recent incarceration was because the trial court had already ruled that this evidence was admissible. He also noted that although he could have objected to protect the record, he did not object because of the trial court's ruling. Because the Petitioner has failed to show that trial counsel's failure to object to this testimony was deficient or prejudicial, the Petitioner is not entitled to relief on this issue.

**III. Settlement Offer of Three Years.** Lastly, the Petitioner, citing Harris v. State, 875 S.W.2d 662 (Tenn. 1994), contends that trial counsel was ineffective in failing to inform him of the State's settlement offer of three years. The Petitioner claims that he emphatically testified at the post-conviction hearing that trial counsel never communicated the State's three-year offer and that he only learned of this offer when his codefendant asked him why he did not accept it prior to their sentencing hearing. The Petitioner also asserts that trial counsel admitted at the post-conviction hearing that he could not recall the three-year offer or whether he had informed the Petitioner of this offer. Given this proof, the Petitioner contends that trial counsel's performance was both deficient and prejudicial because it prevented him from accepting the three-year offer. He asks that this court reverse and remand his case to the trial court with instructions to reinstate the original settlement offer of three years and to allow the parties to negotiate in good faith.

It is well established that counsel's failure to communicate a plea offer to a defendant renders counsel's representation deficient. State v. Garrison, 40 S.W.3d 426, 430-31 (Tenn. 2000); Harris, 875 S.W.2d at 665. Regarding whether such deficient representation results in prejudice, we recognize that

> [i]n the context of a petitioner who seeks to reinstate (rather than withdraw) a plea offer, the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her. Such a "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome" of the proceedings. Henley, 960 S.W.2d at 579 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L.Ed.2d at 698); see also Goad, 938 S.W.2d at 370.

Garrison, 40 S.W.3d at 431.

The Petitioner specifically claims that he is entitled to relief pursuant to Harris v. State, 875 S.W.2d 662 (Tenn. 1994). In Harris, trial counsel admitted that he failed to

inform the petitioner of the State's offer of five years as a Range I offender before the offer expired. Id. at 663. The petitioner proceeded to trial without any knowledge of this offer and was subsequently convicted and sentenced to thirty-five years as a Range II offender. Id. Thereafter, he filed a petition for post-conviction relief, alleging that trial counsel was ineffective in failing to inform him of the State's offer. Id. The post-conviction court granted relief, and the Court of Criminal Appeals affirmed. Id. at 663-64. On appeal, the State argued that the petitioner failed to establish the necessary prejudice because the record showed the trial court would not have approved the five-year plea bargain had it been submitted to him. Id. at 664. The Tennessee Supreme Court held that the petitioner had met the two prongs of Strickland v. Washington, 466 U.S. 668 (1984), concluding there was "no doubt that the prejudice suffered by the [petitioner] was the direct result of failure on the part of defense counsel to discuss the plea bargain offer with his client and his failure to respond timely to the State's offer." Id. at 665.

We conclude that the facts in Harris are distinguishable from those in the instant case. Here, trial counsel testified that he informed the Petitioner of each offer made by the State. He explained that whenever he receives an offer, he immediately notifies the client "because it stops [him] from spending more time on a case that just suddenly gets settled." He noted that any offer involving a consecutive sentence was a "nonstarter" for the Petitioner and that each time he brought an offer involving consecutive sentences, the Petitioner would "become agitated" and would claim that he was "not trying hard enough." Trial counsel said the Petitioner mistakenly believed that because there were no receipts, fingerprints, or DNA evidence linking him to the duffle bags of contraband, the State would be unable to convict him. Trial counsel said he received an offer approximately two weeks prior to trial that was "substantially less" than any of the earlier offers and that although he presented this offer to the Petitioner, the Petitioner refused it and immediately began discussing his defense strategy at trial. We agree with the post-conviction court's finding that the Petitioner was "never interested in settling the case" because he mistakenly believed that he "could beat the charge." Given the proof presented at the post-conviction hearing, the Petitioner has failed to establish that trial counsel was deficient in not informing him of the three-year offer. He has also failed to establish that there is a reasonable probability he would have accepted the offer had it been properly communicated to him. Because the Petitioner has failed to establish trial counsel's ineffectiveness regarding the three-year offer, he is not entitled to relief.

- 14 -

## CONCLUSION

Based upon the aforementioned authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE