IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2026

## CHRISTOPHER NICOL COX v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Scott County**
**No. 12060    Zachary R. Walden, Judge**

_____

**No. E2025-00588-CCA-R3-PC**

_____

The Petitioner, Christopher Nicol Cox, appeals from the Scott County Criminal Court's denial of his petition for post-conviction relief. On appeal, the Petitioner argues the post-conviction court erred in denying his petition in that he received ineffective assistance of counsel due to trial counsel's (1) failure to object, move for a mistrial, or request a curative instruction after a prospective juror stated she had previously "dealt with" the Petitioner through her work with child protective services, (2) releasing an alibi witness from his subpoena when he failed to appear at trial, and (3) failure to adequately advise the Petitioner regarding his right to testify. The Petitioner also asserts that the cumulative effect of trial counsel's errors entitles him to post-conviction relief. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Dillon Zinser, Knoxville, Tennessee, for the appellant, Christopher Nicol Cox.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jared Effler, District Attorney General; and Apryl Bradshaw, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

#### A. TRIAL

A Scott County Grand Jury charged the Petitioner with eighty-one counts of rape of a child, one count of aggravated sexual battery, and one count of continuous sexual abuse of a child. *State v. Cox*, No. E2020-01388-CCA-R3-CD, 2022 WL 325596, at *1 (Tenn. Crim. App. Feb. 3, 2022), *perm. app. denied* (Tenn. June 8, 2022). The evidence adduced at the Petitioner's April 2019 trial established that he began living with the victim's biological mother, with whom he was involved in a romantic relationship, in 2012. *Id.* at *4. At that time, the victim lived with her aunt and uncle, but she began regularly visiting her mother and the Petitioner in 2013. *Id.* at *1. The victim testified that she suffered a series of sexual abuses from the Petitioner between 2013 and 2016, including numerous instances in which the Petitioner touched her "bathing suit area." *Id.* at *1-2. She described this abuse as occurring in the bedroom in which she slept while visiting her mother, on a green couch, at Walmart, and on a "four-wheeler" while she and the Petitioner rode together. *Id.* She also recalled that the Petitioner once put his fingers "between the folds of her vagina." *Id.* at *1. The victim's mother testified that she recorded a phone call between herself and the Petitioner before the Petitioner's arrest in which he admitted he had once inadvertently "inappropriately touched the victim." *Id.* at *4.

At the close of the State's case-in-chief, the Petitioner moved for judgments of acquittal on all eighty-one counts of rape of a child. *Id.* at *5. The trial court partially granted this motion; it reduced all but one of the counts of rape of a child to the lesser-included offense of aggravated sexual battery, but it concluded that the State had introduced sufficient proof to present one count of rape of a child to the jury. *Id.* The Petitioner testified in his defense, denying that he ever "touched the victim in a sexual manner." *Id.* The Petitioner testified he first met the victim in 2013 or 2014 and that she began visiting her mother and the Petitioner in 2015. *Id.* He described the victim's visits as "very sporadic" and estimated she visited "maybe once a month, maybe twice." *Id.* The Petitioner also averred that he would have been away from home during most of 2015 due to his work. *Id.* In its rebuttal proof, the State called Marita Bennett, a Department of Children's Services investigator, who testified that she interviewed the Petitioner as part of her investigation into the victim's allegations. *Id.* at *7. Ms. Bennett recalled that the Petitioner initially reported that the victim "hardly ever" visited her mother and himself at their home, but then stated that she "visited them every other weekend." *Id.*

Upon this proof, the jury convicted the Petitioner of eighty-one counts of aggravated sexual battery, one count of rape of a child, and one count of continuous sexual abuse of a child. *Id.* Following a sentencing hearing, the trial court imposed an effective sentence of sixty years' incarceration. *Id.*

The Petitioner timely appealed, raising numerous claims of trial court error, including a challenge to the sufficiency of the convicting evidence. *Id.* at *1. On review, this court concluded there was insufficient proof to sustain thirty-six of the Petitioner's

convictions of aggravated sexual battery and reversed and vacated those convictions. *Id*. This court affirmed the trial court's judgments in all other respects, and the Tennessee Supreme Court denied review. *Id*.

### B. POST-CONVICTION PROCEEDINGS

On January 13, 2023, the Petitioner filed a timely *pro se* petition for post-conviction relief, alleging ineffective assistance of counsel. The post-conviction court found that the petition raised a colorable claim for post-conviction relief and appointed counsel with instructions to file an amended petition by May 8, 2023, if necessary. Following several extensions and the substitution of post-conviction counsel, the Petitioner filed an amended petition through counsel on September 13, 2024. As relevant to this appeal, the Petitioner alleged that he received the ineffective assistance of counsel because trial counsel failed to object, move for a mistrial, or request a curative instruction during *voir dire* after a prospective juror stated she had previously "dealt with" the Petitioner through her work with child protective services; because trial counsel failed to move for a mistrial or seek an arrest warrant when a subpoenaed alibi witness failed to appear at trial; and because trial counsel failed to adequately advise him regarding his right to testify or otherwise prepare him prior to his testifying. He also argued that the cumulative effect of trial counsel's errors entitled him to post-conviction relief. The State filed a response in opposition on October 25, 2024.[1]

The post-conviction court held an evidentiary hearing on November 25, 2024. The Petitioner testified that trial counsel was appointed to his case approximately one year before his trial. He estimated he met with trial counsel twice while he was incarcerated before trial. He stated he felt unprepared to go to trial because trial counsel "never told [him] what was going on," explained how the court system and "trial worked," or what his "chances" were "in any aspect." He averred that trial counsel did not review discovery with him and instead highlighted "things that w[ere] going to happen."

The Petitioner testified that trial counsel advised him that it was in his "best interest" to testify at trial. He recalled that trial counsel informed him that this decision was "not [his] choice." He stated that this conversation occurred a few days prior to his trial. He also recalled that the trial court asked him questions about his right to testify before he testified at trial.

The Petitioner stated that he had intended to call David Williams, his former employer, to testify at his trial. He explained that his defense was that he was working

---

[1] The court notes that Tenn. Code Ann. § 40-30-108(a) requires the State to file an answer to the amended petition within thirty (30) days.

during the times the victim alleged he had inappropriately touched her and that Mr. Williams would have served as an alibi witness to corroborate his testimony. The Petitioner was unsure whether trial counsel ever sought to subpoena Mr. Williams; however, he averred that he told trial counsel of his desire to have Mr. Williams testify in his defense "the first time" he met with her. He stated that Mr. Williams was "supposed to have been" at his trial. When Mr. Williams did not appear at the Petitioner's trial, trial counsel informed the Petitioner that she would simply not call Mr. Williams to testify. He recalled that trial counsel explained that seeking to compel Mr. Williams to appear at trial would "hurt" the Petitioner's chances of future employment with him. The Petitioner testified he did not give trial counsel his permission to release Mr. Williams from his subpoena.

On cross-examination, the Petitioner agreed that trial counsel met with him before court each day of his trial to discuss what would happen that day. The Petitioner also agreed that trial counsel reviewed the questions she intended to ask him during his testimony. The Petitioner recalled that the trial court offered to have Mr. Williams arrested for his failure to appear at trial while both he and trial counsel were present. He agreed that trial counsel informed the trial court that she and the Petitioner had discussed the issue and that they "did not want him arrested." The Petitioner maintained that trial counsel told him she would not subpoena Mr. Williams and that there was "no reason" for her to call him as a witness.

On redirect examination, the Petitioner testified that the trial court told him "it was [his] right" to testify if he chose to do so. He averred that this was the extent of his conversation with the trial court. He also stated that trial counsel "chose" to release Mr. Williams from his subpoena "on her own," without his authorization.

Trial counsel testified that she was appointed to represent the Petitioner in either December 2016 or January 2017 and that the Petitioner's case ultimately proceeded to trial in April 2019. She estimated she met with the Petitioner ten times prior to his trial.

Trial counsel recalled that on February 8, 2019, the State filed a bill of particulars identifying the specific weekends between 2013 and 2016 during which the victim alleged the Petitioner had committed the charged offenses. Because the Petitioner had previously told her that he had worked "some weekends out of town" during the charged timeframe, trial counsel attempted to locate Mr. Williams after reviewing the bill of particulars. With the assistance of a private investigator, trial counsel located Mr. Williams, who confirmed that he had previously employed the Petitioner. However, Mr. Williams stated that he was unsure about the precise timeframe in which he had employed the Petitioner and that he would need additional time to procure the Petitioner's employment records from his accountant.

- 4 -

Trial counsel testified that she secured a subpoena for Mr. Williams to testify at the Petitioner's trial, which the private investigator served two or three days before trial. When Mr. Williams did not appear at the Petitioner's trial, trial counsel requested a continuance as well as "whatever relief" to which the Petitioner was entitled. The trial court denied the Petitioner's request for a continuance but stated it would prepare a capias. Trial counsel recalled that the Petitioner then "asked what was going on." During their conversation, the Petitioner advised trial counsel that "he didn't want [Mr. Williams] arrested [and] that he didn't feel it would help his case." Trial counsel denied advising the Petitioner that having Mr. Williams arrested would hurt his chances of future employment. After this conversation, trial counsel told the trial court that the Petitioner did not want Mr. Williams to be arrested.

Trial counsel stated she was unsure whether Mr. Williams's testimony would have been beneficial to the Petitioner's defense because she had been unable to review the Petitioner's employment records and because Mr. Williams was unsure of the precise timeframe in which he had employed the Petitioner. However, she noted that the Petitioner reported he worked for Mr. Williams for "several months to a year" and agreed that timeframe would not have covered all the dates listed in the bill of particulars.

Trial counsel testified that she and the Petitioner discussed the possibility of the Petitioner's testifying and that the Petitioner had decided not to testify before his trial began. She recalled that she advised the Petitioner regarding his right to testify the day his trial began. However, after the State played a recording of a phone call between the Petitioner and the victim's mother in which the Petitioner admitted he had inadvertently "inappropriately touched the victim," the Petitioner informed trial counsel he wished to testify. Trial counsel testified that the trial court conducted a *Momon* colloquy with the Petitioner prior to his testifying.

On cross-examination, trial counsel testified that she and the private investigator both spoke with Mr. Williams individually at least once. She stated that she and the Petitioner "talked about Mr. Williams earl[y] on" in the case but that she initially did not believe his testimony would be important. After reviewing the State's bill of particulars, however, trial counsel believed that Mr. Williams's testimony could be important to prove that the Petitioner was out of town on certain of the weekends during which an offense was alleged and to "knock some counts off." She averred that she did not ask the trial court to release Mr. Williams from his subpoena and reiterated that the Petitioner told her he did not want Mr. Williams to be arrested after the trial court stated it would issue a capias to compel Mr. Williams's testimony. She agreed that the Petitioner did not affirmatively inform her that he did not want Mr. Williams to be brought to court.

Trial counsel testified that she and the Petitioner discussed his right to testify and whether he would testify multiple times. She stated that the Petitioner was indecisive as to whether he would testify, noting that "sometimes he thought he might, sometimes he'd say he didn't want to[,] but most [of] the time, he would say that he didn't want to." She recalled that on the first day of trial, the Petitioner told her he had decided not to testify, but later that evening, he informed her he was reconsidering. On the morning of the second day of the Petitioner's trial, trial counsel and the Petitioner had a more "in depth" conversation regarding the Petitioner's decision to testify, and the Petitioner informed her that he had decided to testify. She reiterated that the trial court conducted a *Momon* colloquy with the Petitioner and averred that the trial record was incomplete if it did not include a transcript of that colloquy.

Trial counsel testified that during *voir dire*, a prospective juror stated she had previously "dealt with" the Petitioner through her work with child protective services. Trial counsel testified that she did not believe this comment rose to the level of requiring a mistrial, so she did not object or otherwise request a curative instruction. On redirect examination, trial counsel testified that her decision not to object to the prospective juror's statement during *voir dire* was strategic. She explained that she did not want to draw additional attention to the statement. On recross-examination, trial counsel agreed that she could have objected to the prospective juror's statement and still avoided drawing any untoward attention to it by arguing her objection in a bench conference. She agreed that the other prospective jurors could have been inclined to draw propensity evidence from the prospective juror's statement.

The post-conviction court took the parties' arguments under advisement at the conclusion of the evidentiary hearing. On April 4, 2025, the post-conviction court entered a written order denying post-conviction relief, setting forth its findings of fact and conclusions of law. This timely appeal followed.

## II.  ANALYSIS

On appeal, the Petitioner argues that the trial court erred in denying his petition for post-conviction relief in that he received ineffective assistance of counsel due to trial counsel's (1) failure to object, move for a mistrial, or request a curative instruction after a prospective juror stated she had previously "dealt with" the Petitioner through her work with child protective services, (2) releasing an alibi witness from his subpoena when he failed to appear at trial, and (3) failure to adequately advise the Petitioner regarding his right to testify. He also asserts that the cumulative effect of trial counsel's errors entitles him to post-conviction relief. The State responds that the post-conviction court appropriately denied relief. We agree with the State.

The Post-Conviction Procedure Act provides relief only when the petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. In a post-conviction proceeding, the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. S. Ct. R. 28, § 8(D)(1). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (citations omitted), while its application of the law to those factual findings and the conclusions drawn therefrom are reviewed *de novo* with no presumption of correctness, *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020) (citations omitted).

Both the Constitution of the United States and the Constitution of Tennessee provide the criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Tenn. Const. art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel"); *see Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). To succeed on a claim of ineffective assistance of counsel, the post-conviction petitioner must prove, and the record must affirmatively establish, both that counsel performed deficiently and that this deficient performance adversely impacted the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 693 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "A court need not address both prongs if the petitioner fails to demonstrate either one of them." *Davidson*, 453 S.W.3d at 393. Each element of the *Strickland* analysis of an ineffective assistance of counsel claim is a mixed question of law and fact that this court reviews *de novo*. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)); *Kendrick*, 454 S.W.3d at 457.

Deficient performance is that which, in consideration of "all the circumstances" and the prevailing professional norms at the time of counsel's representation, falls below an objective standard of reasonableness. *Id*. (quoting *Strickland*, 466 U.S. at 688). We defer to counsel's strategic and tactical decisions, even if such decisions were unsuccessful or harmful to the defense, so long as they were "informed ones based upon adequate preparation." *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). In other words, so long as counsel's decisions are made after adequate preparation, this court "will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v.*

*State*, 366 S.W.3d 160, 172-73 (Tenn. Crim. App. 2011). Thus, a petitioner who alleges the ineffective assistance of counsel must, through clear and convincing evidence, overcome the strong presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted).

The post-conviction petitioner must also prove that counsel's deficient performance affected the outcome of his or her trial; that is, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome" of the trial. *Id*. Accordingly, "a petitioner must establish that counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Mobley v. State*, 397 S.W.3d 70, 81 (Tenn. 2013) (internal quotation marks omitted) (quoting *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)).

The Petitioner first contends that the post-conviction court erred in denying relief on Petitioner's claim that trial counsel rendered ineffective assistance by failing to object, move for a mistrial, or request a curative instruction following a prospective juror's comment that she had previously "dealt with" the Petitioner in relation to her work with child protective services. Although the Petitioner acknowledges that trial counsel testified that she intentionally refrained from objecting to the statement to avoid drawing additional attention to it and that she did not believe it required a mistrial, he nevertheless maintains that she "took no action at all to address the highly prejudicial statement" and "should have done something" to address the issue. In consideration of this claim, the post-conviction court accredited trial counsel's testimony, found that her decision not to object to avoid drawing additional attention to the statement was strategic, and held that the Petitioner had failed to establish deficient performance.

The evidence does not preponderate against the post-conviction court's findings. The Petitioner introduced the transcript of his jury trial as a collective exhibit to the post-conviction hearing, which indicates that the following exchange occurred during *voir dire* as the trial court addressed the prospective jurors:

> THE COURT: All right. I'm trying to figure out who can't try the case. Okay. So[,] I'm gonna take it that that . . . you are qualified at this point. Anyone else? Ma'am, yes.
>
> PROSPECTIVE JUROR: Your Honor, I work for child protective services and have dealt with [the Petitioner].
>
> THE COURT: Okay. So[,] you have some knowledge of the case?

PROSPECTIVE JUROR:  Not this particular case.

THE COURT:  Okay.  You have some knowledge of the [Petitioner]; is that correct?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Are you saying that your privilege[d] knowledge of the [Petitioner] would keep you – would make you unable to follow the oath in this case?

PROSPECTIVE JUROR:  Yes, sir.

The trial court asked the prospective juror to state her name and then excused her from the venire.  The record also supports trial counsel's testimony that she did not object to the prospective juror's statement.

The process of *voir dire* exists to protect a defendant's constitutional right to an impartial jury by ensuring the jurors selected for trial are competent and unbiased.  *State v. Howell*, 868 S.W.2d 238, 247 (Tenn. 1993).  Trial counsel's actions during *voir dire* are matters of trial strategy to which we accord particular deference.  *Rogers v. State*, No. M2010-01987-CCA-R3-PC, at *36 (Tenn. Crim. App. Aug. 30, 2012) (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)), *perm. app. denied* (Tenn. Dec. 11, 2012).  The post-conviction court accredited trial counsel's testimony that she strategically refrained from objecting to avoid calling additional attention to the statement, and the record does not preponderate against this finding.  Additionally, although the Petitioner generally alleges that "the prejudice of the [prospective] juror's statement was particularly pronounced" because a reasonable juror, upon hearing that the prospective juror had previously "dealt with" the Petitioner through her work with child protective services, "is going to draw an inference that [the Petitioner] had committed some prior bad act involving children" – that, in other words, the prospective jurors drew a negative bias from the statement – he presented no evidence at the post-conviction hearing to demonstrate his claim that the prospective juror's statement in fact had this effect upon the jurors ultimately selected.  *See Smith v. State*, 357 S.W.3d 322, 348 (Tenn. 2011) (holding that even if a petitioner establishes deficient performance during *voir dire* through juror bias, the petitioner must also "prove that the deficiency resulted in having a juror seated who was actually biased.").  The Petitioner elicited no testimony at the post-conviction evidentiary hearing that tended to corroborate his claim that the remainder of the prospective jurors drew a negative inference or otherwise developed a negative bias towards the Petitioner due to the prospective juror's comment.  He failed to present any evidence at the post-

conviction hearing to support his claim that the jurors ultimately chosen were less than impartial, and the record does not preponderate against the post-conviction court's denial of relief on this basis. *See Rogers*, 2012 WL 3776675, at *38 ("[A]bsent other proof adduced at the post-conviction hearing, a petitioner claiming a biased jury must rely upon the transcript of the *voir dire.*") (citing *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009)). The post-conviction court did not err in denying relief.

The Petitioner next claims that trial counsel rendered ineffective assistance by releasing Mr. Williams from his subpoena when he failed to appear at trial. The Petitioner asserts that his testimony at the evidentiary hearing establishes that he did not give trial counsel permission to release Mr. Williams from his subpoena and that Mr. Williams's testimony would have been particularly important to establish his alibi defense. He notes that trial counsel testified that she believed Mr. Williams would have been an important witness at trial and had, in fact, contacted him prior to trial to discuss Mr. Williams's procuring the Petitioner's employment records. The Petitioner contends that trial counsel should have recognized the importance of Mr. Williams's testimony and should have "use[d] any method available to ensure [his] appearance at trial" and to "ensure the employment records were actually provided to [the Petitioner]."

In consideration of this claim, the post-conviction court accredited trial counsel's testimony and found that after Mr. Williams failed to appear at trial, trial counsel requested "whatever relief" to which the Petitioner would be entitled. While the trial court declined to declare a mistrial, it offered to issue a capias to secure Mr. Williams's testimony. However, the Petitioner then informed trial counsel that he did not want Mr. Williams to be arrested. The record does not preponderate against the post-conviction court's findings. "[D]ecisions about what witnesses to call and what specific evidence to present are generally matters of trial strategy." *Valle v. State*, No. W2024-00039-CCA-R3-PC, 2025 WL 1147568, at *5 (Tenn. Crim. App. Apr. 17, 2025) (first citing *Felts v. State*, 354 S.W.3d 266, 285 (Tenn. 2011); and then citing *King v. State*, 989 S.W.2d 319, 333 (Tenn. 1999)), *perm. app. denied* (Tenn. Sept. 12, 2025). Here, the record indicates that trial counsel took reasonable efforts to procure Mr. Williams's testimony at trial, and when he failed to appear, trial counsel then sought "whatever relief" to which the Petitioner would be entitled. The trial court indicated its inclination to grant relief by issuing a capias, but the Petitioner instructed trial counsel that he did not want Mr. Williams arrested. Accordingly, trial counsel relented in her efforts to present Mr. Williams's testimony only upon the Petitioner's instruction. The record does not preponderate against the post-conviction court's finding that the Petitioner failed to prove that counsel's performance was deficient.

The record, likewise, does not preponderate against the post-conviction court's finding that the Petitioner failed to demonstrate any prejudice from Mr. Williams's absence from the trial. Although he insists that Mr. Williams's testimony was of such great

importance that trial counsel should have used "any method available to ensure" his appearance at trial, he failed to call Mr. Williams to testify at the post-conviction hearing about any employment records that may have corroborated the Petitioner's alibi defense. The Petitioner's claim is, at its core, a claim that trial counsel rendered ineffective assistance by failing to call Mr. Williams as a witness to testify in his defense, and it is well-established that in order to succeed on such a claim, a post-conviction petitioner must call that witness to testify at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990); *see also Pylant*, 263 S.W.3d at 869. Without such evidence, the Petitioner failed to establish any prejudice from Mr. Williams's absence beyond speculation. Accordingly, the post-conviction court did not err in denying relief.

The Petitioner next claims that trial counsel rendered ineffective assistance by failing to adequately advise him of his right to testify. Within this claim, he also alleges that trial counsel erred by failing to adequately ensure he was advised regarding his right to testify. He contends that the post-conviction court erred in denying relief because his testimony at the evidentiary hearing, coupled with the absence of any *Momon* colloquy in the trial transcript, is sufficient to establish trial counsel's deficient performance.

In consideration of this claim, the post-conviction court accredited trial counsel's testimony that she met with the Petitioner on multiple occasions to discuss his right to testify. Trial counsel also testified that she discussed the questions the State may ask the Petitioner if he testified, and that the trial court conducted a *Momon* colloquy with the Petitioner. The post-conviction court also accredited the Petitioner's testimony that trial counsel discussed his right to testify and the "pros and cons" of his testifying prior to trial and that there was "a point in the trial where he was put under oath by the [trial court], and that the [trial court] then asked him questions about his right to testify."

Although a transcript of the *Momon* colloquy is indeed absent from the record, the Petitioner's claim of ineffective assistance must fail because the record does not preponderate against the post-conviction court's determination that trial counsel advised the Petitioner regarding his right to testify and his corresponding right to remain silent and that the trial court conducted a *Momon* colloquy. In his brief, the Petitioner points out the differences between his testimony and trial counsel's testimony and reiterates that "his testimony and the absence of the *Momon* colloquy from the record is sufficient to show, by clear and convincing evidence, that he was not adequately advised by [t]rial [c]ounsel regarding his right to testify." He also posits that trial counsel's testimony cannot be corroborated in the absence of any record of a *Momon* colloquy. Pertaining to prejudice, however, the Petitioner simply alleges that trial counsel's failure to adequately advise the Petitioner "concerning his right to testify was deficient[] and that the deficiency was prejudicial." The Petitioner's failure to specifically articulate how trial counsel's alleged deficiencies in this respect prejudiced his defense brushes perilously close to waiver. *See*

Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Trial counsel testified that both she and the trial court advised the Petitioner of his rights, and he elected to testify. The record does not preponderate against the post-conviction court's finding that Petitioner failed to prove prejudice. *See Mobley*, 397 S.W.3d at 80 ("Because a petitioner must establish both deficient performance and prejudice, a reviewing court need not address both prongs if the petitioner fails to demonstrate either prong."). The post-conviction court did not err in denying relief.

Finally, the Petitioner argues that the cumulative effect of trial counsel's multiple performance deficiencies entitles him to relief pursuant to the cumulative error doctrine. "The cumulative error doctrine exists to protect a criminal defendant's state and federal constitutional right to a fair trial." *State v. Herron*, 461 S.W.3d 890, 909 (Tenn. 2015) (citing *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010)). The cumulative error doctrine provides relief where there are multiple errors committed during the trial, "each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *Hester*, 324 S.W.3d at 76. When a petitioner seeking post-conviction relief alleges that he or she is entitled to relief based upon the cumulative effect of trial counsel's errors, we review "the prejudicial effect of multiple instances of deficient performance." *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022), *perm. app. denied* (Tenn. Apr. 18, 2023). A post-conviction claim of cumulative error based upon allegations of ineffective assistance of counsel is unavailing where a petitioner fails to establish any instance of deficient performance. *Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023), *perm. app. denied* (Tenn. Sept. 11, 2023). Having concluded that the record does not preponderate against the post-conviction court's finding that the Petitioner has failed to establish any instance of deficient performance, we hold that he is not entitled to relief pursuant to the cumulative error doctrine.

## III.  CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

s/ *Steven W. Sword*
STEVEN W. SWORD, JUDGE

- 12 -